UNITED STATES of America, Appellee,

v.

Milton L. KOBROSKY, Defendant, Appellant.

No. 83–1304.

United States Court of Appeals, First Circuit.

Argued June 7, 1983.

Decided July 5, 1983.

Philip Lauro, Springfield, Mass., for defendant, appellant.

C. Brian McDonald, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, McGOWAN,* Senior Circuit Judge, and SELYA,** District Judge.

SELYA, District Judge.

Dr. Milton L. Kobrosky appeals from the district court's refusal, on two separate occasions, to permit him to withdraw his plea of guilty to twenty-four counts of mail fraud, conspiracy, and obstruction of justice. For the reasons set forth herein, we affirm the successive decisions of the district court refusing Kobrosky permission to withdraw his plea. We do so, however,

---

* Of the District of Columbia Circuit, sitting by designation.

** Of the District of Rhode Island, sitting by designation.

without prejudice to the appellant's right to apply for an immediate hearing in the district court, pursuant to 28 U.S.C. § 2255, on his claim of ineffective assistance of counsel.

## I.

Appellant Kobrosky was a physician licensed to practice in the Commonwealth of Massachusetts. He maintained an office in the north end of Springfield, Massachusetts. On February 25, 1982, he was arrested and charged with violating 18 U.S.C. § 1503, obstruction of a grand jury witness. The formal indictment, handed up on March 16, 1982 (the "March Indictment"), charged that Kobrosky had committed both the substantive offense itself, and, together with Howard J. Cotter (a disbarred attorney) and Robert C. McCarthy (a practicing lawyer), had conspired to violate section 1503, in violation of 18 U.S.C. § 371. The charges arose from a federal grand jury investigation of possible mail fraud in connection with insurance claims purportedly prepared and submitted by the named defendants.

Kobrosky was tried on this indictment, with his co-defendants, in August, 1982. Neither charge against Kobrosky reached a jury. The district court entered a judgment of acquittal on the conspiracy charge, pursuant to Fed.R.Crim.P. 29(a), and declared a mistrial as to the remaining charge.

The past, however, proved but a pale pastiche of events to follow; on October 19, 1982, the grand jury returned a superseding indictment (the "October Indictment") against Kobrosky, Cotter, McCarthy, and a pharmacist, Leo Norkin. The October Indictment charged Kobrosky with two counts of obstruction of justice in violation of 18 U.S.C. § 1503,[1] with one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371, and with fifty-four substantive counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 1342.

On November 16, 1982, Kobrosky entered a plea of not guilty to all counts of the October Indictment. After several delays, a trial date was fixed, which was subsequently postponed to February 24, 1983. On that date, Kobrosky changed his plea to guilty to one count of conspiracy, twenty-one counts of mail fraud and the two counts of obstruction of justice. The government then dismissed the remaining counts against him. Co-defendant Cotter pled guilty on this date as well. Co-defendants McCarthy and Norkin entered their respective guilty pleas on the following day.

Kobrosky's plea was accepted following a hearing held in accordance with Fed.R. Crim.P. 11(c). The district judge before whom the plea was entered was thoroughly familiar with material portions of the factual predicate as he had presided over the 1982 trial on the March Indictment. At the hearing, Kobrosky, in response to detailed questioning from the district judge, acknowledged that he was aware: (i) that he was waiving his constitutional right to a speedy and public trial by jury with the assistance of counsel; (ii) that the maximum agglomerate sentence which could be imposed under the counts to which he was pleading guilty (the "uncontested offenses") was one hundred twenty years imprisonment and fines aggregating $41,000.00; and (iii) that the court had not yet decided on the sentence to be imposed. Kobrosky affirmed that he had discussed all of the facts of the case with his attorney, Efrem A. Gordon; that no threats or inducements had been made to euchre a guilty plea; and that his capitulation was entirely free and

---

1. One obstruction of justice count was essentially the same as the substantive charge in the March Indictment. It alleged that Kobrosky advised one Paul F. Connolly "to testify falsely [before the federal grand jury] concerning medical examination and treatment which the defendant, MILTON L. KOBROSKY, M.D., knew had not been performed, and concerning the role of the defendant, HOWARD J. COT-

TER, in preparing an insurance claim for medical expenses and lost wages for Paul F. Connolly...." October Indictment, Count 51; March Indictment, Count III. The second obstruction of justice count alleged the same genre of activity with respect to the testimony of one Deborah Casillas nee LaRiviere. October Indictment, Count 53.

voluntary. Finally, Kobrosky responded that he had sufficiently discussed both the case and his plea with Gordon, and that Gordon's representation had been satisfactory.

Throughout the proceedings, Kobrosky made it clear that he was entering his guilty plea pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford,* the Supreme Court recognized that "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37, 91 S.Ct. at 167. Significantly, the Supreme Court further stated, in language which seems tailor-made for the case at bar, that there was no "material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the present case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* The district court accepted the plea on this basis. Following a reading of the pertinent descriptions of the uncontested offenses as set forth in the October Indictment, the following exchange took place:

THE COURT: Doctor Kobrosky, under the same process, do you understand the *Alford* plea?

MILTON L. KOBROSKY: I understand the plea, sir.

THE COURT: Are you pleading guilty under *Alford* because you feel the nature of the evidence offered by the Government would be overwhelming, so that a Jury would find you guilty?

MR. GORDON: (Interposing) Your Honor, I would like to mention for the record that I have reviewed ... *Alford* with Doctor Kobrosky, and pointed out to him the sections of that decision which are most germane to his reason for pleading, and want to make it clear that he is doing so as he is permitted to, subject to the approval of the court, under *Alford,* making it clear to the court that he is unable to admit his participation in the acts constituting the crime and does not admit to the commission of the criminal acts and ... in making this plea of guilty, wishes to draw to the court's attention his protestation of innocence, but recognizes the practical alternative available.

Tr. Feb. 24, 1982 at 44–45.

The plea was accepted, and case was thereupon continued for preparation of a presentence report and imposition of sentence.

On March 14, 1983, Kobrosky filed his first motion for permission to withdraw the plea (the "March 14 motion"). He appended thereto his own affidavit and the affidavits of six secretaries who had worked for Kobrosky, Cotter and-or McCarthy. The grounds alleged in support of plea withdrawal were the recent discovery of supposedly exculpatory evidence and of evidence putatively corroborative of Kobrosky's theory of the case, namely, that his signature had been forged on many of the medical reports submitted with the insurance claims. The government vigorously disputed the March 14 motion, contending *inter alia* that the evidence presented with the motion had been known or available to Kobrosky, had due diligence been exercised, throughout the discovery period.

The trial judge denied Kobrosky's motion on March 17, 1983, following oral argument. The court left no doubt but that it understood Kobrosky's *Alford* plea to be a plea of guilty, made for the purpose of asseverating his innocence:

THE COURT: You're doing that not for the trial court, you're doing that really for the administrative body that may follow, whether or not the license in this case of the lawyers or a doctor may be in jeopardy.

MR. GORDON: I would differ with that, your Honor.

THE COURT: Well, I think it was pretty clear that was the reason for it, and your own statement, sir, is that you protest your innocence but you think the

evidence would be of such weight that any Jury or finder of the fact would in fact find him guilty.

Tr. March 17, 1983 at 10–11.

After discussing the affidavits submitted with the March 14 motion, and reviewing the history of the litigation, the district court concluded:

> For this court to allow a plea of guilty to be withdrawn and to allow that particular defendant to thereafter go to trial, it must be of such serious nature and in the best interest of justice not only is the court's board discretion tested, but the aspect upon which this defendant's guilt is determined.
>
> You either allow a manifest injustice to go forward, if you see it, or just the opposite, you find that the plea itself was made voluntarily, knowingly and intelligently and make your decision accordingly.
>
> \*    \*    \*    \*    \*    \*
>
> I have seen nothing here that makes me feel other than perhaps there might be some mitigation that perhaps could be argued by Doctor Kobrosky at the time of disposition, but certainly nothing to make me feel that there would be manifest injustice, as I say, if I did not allow this plea to stand on its own merits.
>
> The doctor is a professional man, he is an intelligent man, he understood clearly what this trial and case meant to him, and he knew what it might mean to his professional career if he pled under any conditions, and in spite of all that and with the aid and assistance of one of this area's noted criminal lawyers who had all the time necessary to give him proper advice, he did plead.
>
> \*    \*    \*    \*    \*    \*
>
> ... I am satisfied that the doctor understood, and ... I find no reason to make me feel that this plea should be withdrawn.
>
> I also do believe that the government had made a point ... namely, the government claims its prosecution has now been dismantled and if they decided to go forward against Kobrosky under those conditions they would have to start all over again locating witnesses and get their prosecution ready.

*Id.* at 45–48.

On March 24, 1983, the district court sentenced Kobrosky to three years imprisonment, with the first six months to be served, the balance suspended and Kobrosky to be placed on probation for three years. This sentence was imposed on each of the two obstruction of justice counts, with the identical sentences to be served concurrently. Kobrosky was also ordered to pay a penal fine of $5,000.00. For the remaining counts, the court ordered that the same sentences be imposed and served contemporaneously with each other and with the sentences imposed on the obstruction of justice counts. The court stayed execution of sentence until April 14, 1983 at 4:00 o'clock p.m.

One week later, Kobrosky moved for an order staying the enforcement of the sentence of imprisonment pending appeal. The district court denied this motion by order dated April 6, 1983, stating:

> All the new evidence argued by the defense since the time of disposition was, in fact, evidence always available to the defendant during preparation of trial and prior to his return of the guilty plea. None of the evidence pertains to the obstruction of justice count in the indictment; much of it was not material to the mail fraud count because some documents were signed by the defendant as stipulated at an earlier trial and others were identified by handwriting experts.

*United States v. Kobrosky,* Crim. No. 82–98–F, slip op. at 2 (D.Mass. April 6, 1983).

The next day (April 7, 1983), Kobrosky filed two motions for the imposition of alternative sentencing in lieu of incarceration, such as an increased fine and-or compulsory community service. He also filed a motion for reconsideration of the March 14 motion, this time relying upon what he characterized as a "highly exculpatory" statement signed by Cotter. The district court denied all three motions on April 12,

1983, stating that it found nothing either new or exonerative in the motion for reconsideration. The court pointedly reminded Kobrosky that he had submitted nothing pertaining to his guilty plea on the two counts of obstruction of justice, and that it was on those two counts that he had, in the first instance, been sentenced. *Id.* at 1 (April 12, 1983).

Kobrosky then submitted a second motion for stay of execution of sentence, pending a decision on his application to this court for a stay pending appeal. The district court, by order dated April 13, 1983, granted the stay until 12:00 o'clock noon, April 21, 1983. On April 19, 1983, this court denied Kobrosky's application for a stay of execution, but permitted him to request an expedited hearing of his appeal on the merits.

Kobrosky, undaunted, retained new counsel. On April 20, 1983, he filed two further motions. He again moved for permission to withdraw his plea (the "April 20 motion"), alleging, for the first time, ineffective assistance of his trial counsel, Gordon. He filed a tandem motion for stay of execution of his sentence. The district court denied both motions on April 20, 1983, following oral argument. No evidence was taken as to claimed ineffectuality of counsel.[2]

Kobrosky began serving his sentence on April 21, 1983. This appeal followed.

Kobrosky's notice of appeal, filed March 29, 1983, states that he excepts to denial of his motions (i) for disclosure of relevant grand jury testimony, (ii) to dismiss on speedy trial and double jeopardy grounds, and (iii) for severance relief from prejudicial joinder, as well as the rejection of the March 14 motion. His brief on appeal contests only the denial of his March 14 and April 20 motions for plea withdrawal, however; and nothing else was argued in this tribunal. In accordance with our established practice, therefore, all other issues are deemed to have been waived. *Niziolek*

*v. Ashe,* 694 F.2d 282, 284 (1st Cir.1982). *Accord Red v. Blackburn,* 636 F.2d 1027, 1028 (5th Cir.1981); *Tedder v. F.M.C. Corp.,* 590 F.2d 115, 117 (5th Cir.1979).

### II.

■ A defendant possesses no absolute right to withdraw a guilty plea even prior to the imposition of sentence, *United States v. Vasques-Velasco,* 471 F.2d 294 (9th Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2163, 36 L.Ed.2d 692 (1973), for such a right "would reduce the significance of a Rule 11 proceeding to a time-consuming exercise, automatically reversible before sentence at the option of a defendant." *Nunez Cordero v. United States,* 533 F.2d 723, 726–27 (1st Cir.1976). To bestow such a unilateral advantage upon the accused would defeat a legitimate goal of our criminal justice system, which strives to hold the balance between the prosecution and the prosecuted steady and true.

■ On the other hand, when plea withdrawal motions are made prior to sentencing, as was Kobrosky's March 14 motion, the standard to be applied by the district court is a liberal one. *Id.* at 725. The district court must determine if, on balance, it would be "fair and just" to permit a plea withdrawal in that particular case. *Id.* (quoting *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927)); *United States v. Barker,* 514 F.2d 208, 219 (D.C.Cir.) (*en banc*), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). Such a determination, on appeal, will be set aside only if the appellant convinces us that the court below abused its discretion. *United States v. Keefe,* 621 F.2d 17, 20 (1st Cir.1980); *Nunez Cordero v. United States,* 533 F.2d at 725. *Accord United States v. McKoy,* 645 F.2d 1037, 1038 (D.C.Cir.1981); *United States v. Rasmussen,* 642 F.2d 165, 167 (5th Cir.1981).

---

2. At oral argument before this court, Kobrosky's new attorney, Philip H. Lauro, indicated that, at the April 20, 1983 hearing, he was primarily concerned with the motion to stay, and that he did not request an evidentiary hearing on either the motion to withdraw a plea or the ineffective assistance of counsel issue. The transcript of the April 20 hearing reflects this emphasis.

The district court must consider several factors in conducting its judicial tamisage. One important issue is whether the defendant's guilty plea was truly understanding and voluntary. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969); *Marquis v. United States,* 698 F.2d 13, 15–16 (1st Cir.1983). As this court has emphasized on several occasions, the Rule 11 procedures followed by the district court in accepting the plea are crucial in later determining whether this requirement was met. *Id.; Mack v. United States,* 635 F.2d 20, 23–24 (1st Cir.1980). *See McCarthy v. United States,* 394 U.S. at 465, 89 S.Ct. at 1170.

Another important factor is whether the movant has asserted his legal innocence. *United States v. Barker,* 514 F.2d at 220. Yet, the mere protestation of legal innocence cannot in and of itself be issue-determinative, for "[t]here are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal." *Nunez Cordero v. United States,* 533 F.2d at 726 (quoting *United States v. Barker,* 514 F.2d at 726). When a court accepts a "tactical" guilty plea from a defendant who continues to assert his innocence, *see North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and the accused thereafter moves for a withdrawal of that plea, scrutiny must focus closely on the grounds asserted in support of the motion. In that examination, an analysis must perforce be made of the reason(s) why defenses limned in the withdrawal motion were not put forward at the time of the original pleading. *United States v. Barker,* 514 F.2d at 221.

In calibrating the balance, however, perscrutation cannot be limited solely to the defendant's plight; due consideration must also be accorded to whether the government will suffer undue prejudice as a result of the withdrawal. *Id.* at 222. The most common form of prejudice is the difficulty that the government would encounter in reassembling its witnesses; and the longer the delay in moving for a plea withdrawal, the greater this prejudice is likely to be. *Id.* In such instances, the reasons given by the defendant to support a withdrawal must have increased persuasive force. *Id.* Accord *United States v. Vasquez-Velasco,* 471 F.2d at 294; *United States v. Lombardozzi,* 436 F.2d 878, 881 (2d Cir.), *cert. denied,* 402 U.S. 908, 91 S.Ct. 1379, 28 L.Ed.2d 648 (1971). Finally, the court may properly consider any substantial inconvenience it would suffer were the plea to be withdrawn. *United States v. Barker,* 514 F.2d at 222.

In the case before us, appellant asserted his legal innocence by making an *Alford* plea. Moreover, as in *Nunez Cordero v. United States,* 533 F.2d at 726, the district court's inquiries in the February 24, 1983 Rule 11 proceeding were complete and clear. During that hearing, the district judge explained to Kobrosky all the rights and privileges which he would be waiving by pleading guilty and the maximum sentences that could be imposed for the counts to which he was foregoing his right to trial. The court read the material portions of the uncontested charges to Kobrosky, and the Assistant United States Attorney summarized the evidence that the government would have presented and relied on in proving its case. *See Mack v. United States,* 635 F.2d at 25–26.

Kobrosky, a sophisticated, well-educated professional man, acknowledged that he understood both the charges and the meaning of his guilty plea, and affirmed his satisfaction with the quality of his legal representation in the case. He averred that he was entering his plea with a clear mind and without duress. Kobrosky's attorney, Gordon, also stated that he had discussed the case and the plea with Kobrosky and was content that his client understood the consequences of his actions. Nothing in the record, through the Rule 11 proceeding, indicates that Kobrosky was anything other than an intelligent defendant who fully understood what he was doing and was competent voluntarily to enter an *Alford* guilty plea. Thus, the Rule 11 proceedings point

unerringly to the conclusion that the district judge should not have reconsidered his acceptance of Kobrosky's plea upon the filing of the March 14 motion, as the circumstances of the plea in no way implicate the "fair and just" criterion. The interval of three weeks between the district court's acceptance of Kobrosky's guilty plea and his March 14 motion indicates as well that Kobrosky was neither confused nor unfairly pressured. *See United States v. Keefe,* 621 F.2d at 20; *Nunez Cordero v. United States,* 533 F.2d at 726; *United States v. Barker,* 514 F.2d at 222.

Indeed, Kobrosky did not expressly rely on any Rule 11 defect in making the March 14 motion. Instead he argued that compurgatorial evidence had come to light, some of which, he contended, had previously been kept under wraps by the government. He now claims that this evidence would have made the government's case seem less overwhelming and would have convinced him to take his chances with a jury. Based on our review of the record, we agree with the district court that this evidence was neither fresh nor particularly exculpatory nor previously withheld by the government.

The district court properly viewed this evidence in a skeptical light, given the generic ability of most defendants to conjure up theories which could result in acquittal. *See Nunez Cordero v. United States,* 533 F.2d at 726. Significantly, for the purposes of the March 14 motion, defense counsel offered no viable reason for failing to put forward or to consider the evidence in question at an earlier, more seasonable time. *United States v. Rasmussen,* 642 F.2d at 168; *United States v. Barker,* 514 F.2d at 221. This omission is particularly glaring in the case at bar, since the six third-party affiants were all current or past employees of Kobrosky or of his co-defendants.

It is also worthy of note that all of the evidence Kobrosky submitted with his March 14 motion (and with the ensuing motion to reconsider) pertained to the charges against him for mail fraud—as opposed to the two counts for obstruction of justice, to which he also pled guilty. Thus, even taken at face value, Kobrosky's so-called exculpatory evidence in no way altered the legal landscape of those charges.[3]

We look lastly, with respect to the March 14 motion, to the suggestion that the district court may have applied a harsher standard of review than was necessary. As previously quoted, the district court, in denying this motion, did at one point refer to "manifest injustice", see p. 453, *ante,* the standard applicable to post-sentencing withdrawal motions. *See, e.g., United States v. Barker,* 514 F.2d at 218; Fed.R.Crim.P. 32(d). A reading of the colloquy and decision as a whole, however, indicates that, despite some loose use of language, the proper "fair and just" standard was applied by the court below.[4] The court noted the absence of any new or hitherto undiscoverable evidence, sufficiently illuminated the circumstances dispelling any reasonable inference of innocence, and accepted the government's argument of prejudice. Given that the March 14 motion failed to address the obstruction of justice counts, and having in mind that the prosecution, velivolant at the time the plea had been accepted, had since been dismantled, there was no abuse of discretion here. The record adequately evinces that Kobrosky made no compelling showing of a "fair and just" predicate upon which withdrawal of his plea could be bottomed.

### III.

In reviewing the denial of Kobrosky's April 20 motion, made almost one month subsequent to his sentencing, the

---

3. The district court plainly delineated, when sentence was eventually imposed, that these two counts were the principal sentencing vehicle. *See* p. 453, *ante.*

4. While we need not, for reasons articulated *infra,* decide the point, the government's difficulty in reassembling its witnesses may in any event be a basis upon which a criterion more stringent than "fair and just" could rightfully be imposed on Kobrosky. *United States v. Barker,* 514 F.2d at 222; *United States v. Vasquez-Velasco,* 471 F.2d at 294; *United States v. Lombardozzi,* 436 F.2d at 881.

benchmark is whether the district court abused its discretion in finding no "manifest injustice" mandating the withdrawal of the guilty plea. *See United States v. Barker*, 514 F.2d at 218; Fed.R.Crim.P. 32(d). This astringent standard for post-sentencing plea withdrawal motions is intended to prevent a defendant from testing the waters of potential punishment, and then withdrawing the plea if he or she finds the current too swift. *United States v. McKoy*, 645 F.2d at 1040 n. 3.

The ground asserted for withdrawal on this occasion was ineffective assistance of counsel. Such an accusation is a grave one, not lightly to be made nor ignored. *See McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); *Marquis v. United States*, 698 F.2d at 16; *Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir.1979); *United States v. DiCarlo*, 575 F.2d 952, 955 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). But, the gravity of the charge requires more than the frenzied brandishing of a cardboard sword. No extrinsic evidence was offered either to buttress the allegations of ineffectuality, or to counter the government's protest that it would be significantly prejudiced were Kobrosky allowed to withdraw his plea. Instead, before the district court, which had a year's worth of experience and observation in managing this defendant's particular case, was an educated, percipient physician who, almost two months earlier, had sworn that his trial counsel was satisfactory.

Kobrosky's appellate counsel, apparently spurred by the belated dawning of an awareness of these shortcomings, has peppered his brief in this court with supposed facts and theories, alien to the record, in a misguided effort to document the defendant's conclusory allegations of ineffective legal assistance. Such a practice is so plainly improper as to be deserving of censure. And, the submission by the appellee of a newly-emergent affidavit signed by Attorney Gordon, in a seeming effort to fight fire with fire, is likewise deplorable. We are an appellate tribunal, not a *nisi prius* court; evidentiary matters not first presented to the district court are, as the greenest of counsel should know, not properly before us. *Nogueira v. United States*, 683 F.2d 576, 578 (1st Cir.1982); *United States v. Sachs*, 679 F.2d 1015, 1019 (1st Cir.1982); *United States v. Payton*, 615 F.2d 922, 925 (1st Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 830 (1980). Thus, we will disregard all such proffers which are dehors the record; and we admonish counsel that any repetition of this sort of unprofessional conduct will not be tolerated.

On the record before the district court, the ruling that Kobrosky had failed to carry his burden of demonstrating "manifest injustice" was patently warranted; and the denial of the April 20 motion was well within the legitimate bounds of the sound discretion of the court below. *See Nunez Cordero v. United States*, 533 F.2d at 725.

### IV.

If Kobrosky's averments as set out in the April 20 motion are more than sheer gossamer—a subject as to which we express no opinion—they should be aired in a suitable forum with all due dispatch. The right to counsel is a cornerstone of our criminal justice system, and counsel who does not possess or exercise the skill, diligence or knowledge adequately to represent a criminal defendant is little better (and sometimes, much worse) than no counsel at all. *Polk County v. Dodson*, 454 U.S. 312, 322, 102 S.Ct. 445, 452, 70 L.Ed.2d 509 (1981). *See McMann v. Richardson*, 397 U.S. at 770–71, 90 S.Ct. at 1448–1449. These allegations, which in this case amount to a collateral attack on Kobrosky's guilty plea, *see Marquis v. United States*, 698 F.2d at 15; *Mack v. United States*, 635 F.2d at 22, can be raised in a proceeding brought pursuant to 28 U.S.C. § 2255. Since this court has not reached the merits of the claimed inadequacy of representation, such an option remains open to Kobrosky.

*Affirmed.*