UNITED STATES of America

v.

Hector ACEVEDO–RAMOS.

Cr. No. 85–0108 GG.

United States District Court, D. Puerto Rico.

Sept. 18, 1985.

William M. Kunstler, New York City, Luis F. Abreu Arias, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

GILBERTO GIERBOLINI–ORTIZ, District Judge.

This case is before us upon a motion to withdraw a guilty plea filed by Héctor Acevedo-Ramos (Acevedo). The government has opposed this petition, a hearing was held and memoranda of law, together with numerous exhibits and the transcripts of hearings have been submitted and considered.

Defendant along with others was indicted by the grand jury for conspiracy to obstruct, delay and affect interstate commerce by extortion and robbery of property in excess of four hundred thousand dollars ($400,000.00) and for aiding and abetting each other in the actual commission of

these offenses—all in violation of Title 18 U.S.C. §§ 1951 and 2.

The facts as revealed from the record are as follows: At the time the present indictment was returned, defendant Acevedo was on trial before Judge Héctor M. Laffitte, in Criminal Case No. 84-0373, which involved a robbery of over six hundred thousand dollars ($600,000.00) worth of diamonds from the Taillex Diamond Manufacturing Company. The present indictment was sealed until the Taillex trial was over since the issue of prejudicial pretrial publicity had been raised in those proceedings.

On April 25, 1985, after a jury trial, Acevedo was found guilty on both counts of that indictment. Acevedo's attorneys during the Taillex case were William M. Kunstler, Ronald L. Kuby (both from New York) and Luis F. Abreu-Elías (local counsel).

On April 29, 1985, the instant indictment was unsealed and on May 2, 1985, Acevedo was arraigned. At this time, Acevedo was not represented by Kunstler, Kuby and Abreu-Elías but by Julio Morales-Sánchez, a former United States Attorney, and Julio Gil de Lamadrid, who had been privately retained by him.

On or about April 29, 1985, Ms. Lydia Lizarribar, Assistant United States Attorney, was personally contacted at her residence by Héctor Acevedo, Jr., defendant's son, who was sent by Acevedo, Sr. to deliver a two-page, hand-written note signed by him. In said note, Acevedo indicated that he was interested in pleading guilty to any cases which might be filed against him in exchange for a recommendation by the government of a ten-year sentence in the Taillex case. (See Exhibit 5 of the government's opposition). Acevedo was informed, through his son, that any negotiations with the United States Attorney's Office would have to be conducted through an attorney.

Thereafter, Morales-Sánchez and Gil de Lamadrid approached government counsel in an effort to establish plea bargaining negotiations. Since the obtaining of a lower sentence in the Taillex case appeared to concern defendant, Assistant United States Attorney H. Manuel Hernández inquired as to the role of Kunstler, Kuby and Abreu-Elías in the plea negotiations since they had been Acevedo's attorneys in the Taillex case. Morales-Sánchez and Gil de Lamadrid indicated that they had complete authority to represent Acevedo in all criminal matters where he was involved that were now pending in the United States Attorney's Office.

At the government's urging, Morales-Sánchez and Gil de Lamadrid obtained a letter dated May 1, 1985, from Acevedo addressed to the United States Attorney which expressly authorized them to represent Acevedo in any matter dealing with any criminal case in which he had been indicted or will be indicted in the future.

During the plea negotiations which lasted several weeks, Morales-Sánchez and Gil de Lamadrid informed Assistant United States Attorney Hernández that Acevedo was willing to waive his appeal in the Taillex case, plead guilty in the present case, and in any other case the government filed against him. In exchange, Acevedo expected a recommendation for a sentence of ten years in the Taillex case and ten years concurrent time in this case and all future cases. The negotiations involved the present case, a murder-robbery RICO case to be filed against Acevedo and others in the near future, a bankruptcy fraud case and at the insistence of Acevedo, the sentencing in the Taillex case. The government also agreed not to seek any fines, forfeiture of monies or property of Acevedo.

On May 29, 1985, a status conference was held at which time the parties informed the court that a brief continuance was needed to finalize the plea agreement. The continuance was granted and a final agreement was reached between the attorneys for the defendant and the government. The change of plea hearing was set for June 4, 1985.

On that date, Acevedo again appeared represented by Gil de Lamadrid. Acevedo signed a written plea agreement which set

forth the terms of his agreement with the government. This agreement was also signed by both of his attorneys, Morales-Sánchez and Gil de Lamadrid. An official "Petition to Enter a Plea of Guilty" was also filed. This is a document consisting of eleven pages and forty-four questions and answers. Acevedo answered each question and both he and his attorney signed the document and initialed each page. The petition contains these answers:

# 7 Q: If you have an attorney, have you had enough time to talk to your attorney about your case?

A: Yes.

# 9 Q: ... are you satisfied with the job he has done for you?

A: Yes.

# 10 Q: If you have any objections to the way in which the attorney has represented you, what has he done wrong or what he has not done?

A: None.

# 22 Q: Do you realize that if you plead GUILTY the court may impose the same punishment as if you had pleaded NOT GUILTY and had been convicted by a jury?

A: Yes.

# 23 Q: Do you know that the sentence you will receive is solely a matter for the judge to decide?

A: Yes.

# 27 Q: Has any threat of any kind been made by anyone that causes you to plead guilty?

A: No.

# 29 Q: Has any plea agreement been made by you with anybody which causes you to plead GUILTY?

A: Yes. (Referring to plea agreement).

# 30 Q: Has any promise been made by anyone which causes you to plead GUILTY, aside from the promises, if any, set out in your answer to question 29?

A: No.

# 31 Q: Has anyone suggested that you will receive a lighter sentence if you plead GUILTY?

A: No.

# 36 Q: Are you pleading GUILTY for any other reason other than the fact that you are guilty?

A: No.

In an accompanying "Certificate of Counsel" his attorney stated that "to the best of my knowledge and belief the statements, representations and declarations made by the defendant in the foregoing petition are ... accurate and true", and that the plea is "voluntarily and understandingly made."

At the commencement of the change of plea hearing, Acevedo was placed under oath and warned that any false statement would subject him to the penalties of perjury. Defendant stated that he had consulted with his attorneys and was very satisfied with their representation; that he felt all right; that he was not under the influence of any drugs, alcohol or medication; and that he understood the proceedings. Acevedo also informed the court that he had had ample opportunity to discuss the case with his attorneys. His attorney, Gil de Lamadrid asserted that he explained to his client all the charges contained in the indictment, the elements of the offense and the rights waived, and that Acevedo clearly understood the consequences of his plea of guilty. The court also explained to Acevedo all the rights and privileges which he would be waiving by pleading guilty. The maximum sentences that could be imposed were also explained to defendant. The entire indictment was then read to Acevedo and the court also explained the indictment and the legal terminology contained therein.

Upon the court's inquiry, Acevedo asserted that he had not been threatened or forced by anyone to plead guilty. The plea agreement was then read to Acevedo after which the court informed that it was not bound by the agreement, and therefore, could impose the maximum sentence as to both counts; that they could be imposed consecutively with each other and consecutively with any other sentence. Acevedo stated that he understood this. Acevedo

also indicated that no prediction, prophecy or promise had been made to him regarding his sentence.

The court went through the entire indictment again asking specific questions as to what the defendant had done and Acevedo gave unhesitating answers admitting his participation in the criminal acts charged. Thereafter, the prosecution summarized the evidence it would have presented had the case gone to trial. Both Acevedo and Gil de Lamadrid expressed their agreement with the government's summary. Complete discovery had been given previously. Gil de Lamadrid stated that defendant did not have any evidence for rebuttal.

After an extensive colloquy, this court accepted Acevedo's guilty plea, and ordered a presentence report. Sentencing was scheduled for June 20, 1985.

On June 5, 1985, the sentencing hearing was held in the Taillex case before Judge Laffitte. Prior to the sentence, local counsel for defendant in that case, Mr. Abreu-Elías, objected to the plea agreement entered and requested that he, as well as Kunstler and Kuby, be relieved from further. representing Acevedo in that case. Abreu-Elías was not allowed to withdraw until after sentence was imposed. (*See* Exhibit 8 of government's opposition).

Prior to the imposition of sentence, and pursuant to the plea agreement, the government recommended to Judge Laffitte that Acevedo be sentenced to a term of fourteen years imprisonment on each of the two counts to be served consecutively. At that time, Assistant United States Attorney Hernández also informed the court that Acevedo had already pled guilty in the instant case and had agreed to save the government the expenses of several trials and an appeal. Notwithstanding the government's recommendation and after due consideration of the presentence report submitted by the Probation Officer, Acevedo was sentenced to imprisonment for a period of twenty years on Count One and fifteen years on Count Two to be served consecutively, and 'a $10,000 fine on each count.

On June 7, 1985, Morales-Sánchez personally informed Assistant United States Attorney Hernández that Acevedo was still willing to honor his agreement and waive his appeal in Taillex if the government would agree not to file the murder-robbery RICO charges against him. The government rejected Acevedo's attempt to impose further conditions and to renegotiate the plea agreement. (*See* Exhibit 1 of government's opposition).

Thereafter, on June 14, 1985, Acevedo filed a Notice of Appeal in the Taillex case. (*See* Exhibit 10 of government's opposition). On June 17, 1985, almost two weeks after he had entered a guilty plea in this case, and twelve days after his sentencing in the Taillex case, Acevedo filed his motions to withdraw guilty plea. One motion was filed by attorneys Gil de Lamadrid and Morales-Sánchez and the other was filed by Kunstler, Kuby and Abreu-Elías.

We held a hearing on June 20, 1985, at which time argument was heard from counsel for both sides on the motions to withdraw guilty plea and the government was granted fifteen days to file any affidavits, if appropriate, and its memorandum of law in opposition to Acevedo's motion to withdraw his guilty plea. Kunstler was permitted to appear *pro hac vice* on behalf of Acevedo and also argued defendant's motion to withdraw.

In the first motion to withdraw guilty plea filed by attorneys Gil de Lamadrid and Morales-Sánchez, it is alleged that Acevedo is not guilty of the offense charged; that he has new information to prove his innocence; that he has a new insight into his defense; that his emotional state of mind did not permit him to comprehend the consequences of his guilty plea; that the government's recommendation in the Taillex case was not done in good faith; that Judge Laffitte did not abide by the plea agreement nor did he allow Acevedo to withdraw his plea, and that the government will not suffer substantial prejudice if Acevedo is permitted to withdraw his guilty plea.

The other motion to withdraw guilty plea filed by Kunstler, Kuby and Abreu-Elías, defendant's attorneys in the Taillex case, alleges that Acevedo was in a panicky and depressed state when he entered the plea agreement; that he was denied effective assistance of counsel; and that the government incurred in misconduct.

### The Applicable Law

Rule 32(d) of the Rules of Criminal Procedure provides as follows:

(d) Plea Withdrawal. If a motion for withdrawal of plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

■ At the outset, we note that defendant possesses no absolute right to withdraw a guilty plea even prior to the imposition of sentence. *United States v. Crosby,* 714 F.2d 185 (1st Cir.1983), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984); *United States v. Kobrosky,* 711 F.2d 449, 454 (1st Cir.1983). To recognize such a right "would reduce the significance of a Rule 11 proceeding to a time-consuming exercise, automatically reversible before sentence at the option of a defendant." *Núñez-Cordero v. United States,* 533 F.2d 723, 726–27 (1st Cir.1976).

■ Conversely, when plea withdrawal motions are made prior to sentencing, as in the present case, the standard is a liberal one. We must only determine whether or not it would be "fair and just" to permit a plea withdrawal under the present circumstances. *Kobrosky, supra,* 711 F.2d at 454 (quoting *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). On appeal, such a determination shall be set aside only upon abuse of discretion. *United States v. Keefe,* 621 F.2d 17, 20 (1st Cir.1980); *Núñez-Cordero, supra,* 533 F.2d at 725.

■ Several factors must be considered in conducting our inquiry. One crucial determination is whether defendant's guilty plea was made voluntarily with full understanding of the charges. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). Clearly, the Rule 11 procedures implemented by the court in accepting the guilty plea are critical in determining whether this requirement was met. *Mack v. United States,* 635 F.2d 20, 23–24 (1st Cir.1980).

■ Another important factor is whether the defendant asserted his legal innocence. When a court accepts a "tactical" guilty plea from a defendant who continues to assert his innocence, *see North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and the defendant subsequently moves to withdraw that plea, the grounds in support of the motion are to be closely scrutinized.

■ Another factor to be properly considered is the possible prejudice to the government that withdrawal of the plea would produce. *Kobrosky, supra,* 711 F.2d at 455.

■ In the case before us, defendant did not assert his legal innocence by making an *Alford* plea. Moreover, it is clear from the transcript of the change of plea hearing that the requirements of Rule 11 were assiduously and conscientiously complied with.

During the hearing, Acevedo was advised of all the rights and privileges he would be waiving by pleading guilty and the maximum sentences that could be imposed for both counts. This court personally questioned defendant as to each of the elements of the crime and defendant's answers made it clear that he understood each of the elements of the offense to which he was pleading guilty.

Acevedo, a sophisticated, well-educated (college degree) business man, with experience in criminal court proceedings, ac-

knowledged that he understood both the charges and the consequences of his guilty plea, and affirmed his satisfaction with the quality of his legal representation in this case. He also asserted that he had entered his plea without duress. Acevedo's attorney, Gil de Lamadrid stated that he had discussed the case and the plea with his client and that he was convinced that Acevedo fully understood the consequences of his actions, Acevedo was informed that the court reserved the right to impose whatever sentence it deemed fit, up to the maximum.

There is nothing in the record which indicates that Acevedo was anything other than an intelligent defendant who fully understood what he was doing and was competent to voluntarily enter a guilty plea. Clearly, the Rule 11 proceedings were thoroughly conducted and in no way implicate the "fair and just" criterion.

Nor was the motion to withdraw made so soon after the plea as to indicate that the latter was made in haste or confusion, *see United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.) (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975), since there was an interval of almost two weeks between the acceptance of Acevedo's guilty plea and the motion for plea withdrawal.

■ Moreover, due consideration must be accorded to the government's allegations that it would be significantly prejudiced if Acevedo were allowed to withdraw his guilty plea. Although a withdrawal of a guilty plea prior to sentencing is normally allowed, if the government has been prejudiced by its reliance on the guilty plea, this dispensation should not be so freely granted. *United States v. Brown*, 617 F.2d 54 (4th Cir.1980). We must weigh this prejudice against defendant's reasons to seek withdrawal. Likewise, defendant's reasons for withdrawal must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the government's ability to prosecute the case. *Barker, supra*, 514 F.2d at 222. Here, the government claims that it has dismantled its case, having sent its main witness to a penitentiary in the United States, has stopped all further investigation and has lost track of its witnesses. Furthermore, it appears that the government entered into a plea agreement with Acevedo's co-defendant Agapito Cucuta Cardona after Acevedo pled guilty which was premised on the fact that the government would not need Cucuta's testimony for trial. Under these circumstances, defendant's reasons to support a withdrawal must have increased persuasive force. *Barker, supra*, 514 F.2d at 222; *Kobrosky, supra*, 711 F.2d at 455.

■ Another ground asserted for withdrawal of the guilty plea was ineffective assistance of counsel. This accusation is a grave one, not lightly to be made or ignored. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Kobrosky, supra*, 711 F.2d at 457; *United States v. DiCarlo*, 575 F.2d 952, 955 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). In assessing attorney's performance, all the federal courts of appeals have now adopted the "reasonably effective assistance" standard, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984), which requires that a defense counsel's representation be within the range of competence expected of attorneys in criminal cases. *Perron v. Perrin*, 742 F.2d 669, 673 (1st Cir.1984); *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir.1978). Under this standard, effective representation is not the same as errorless representation. *United States v. Campa*, 679 F.2d 1006, 1014 (1st Cir.1982). Nor should the appellate court second-guess tactical decisions made by an attorney unless they are unreasonable. *United States v. Pasarell*, 727 F.2d 13, 17 (1st Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984); *United States v. Ortiz-Oliveras*, 717 F.2d 1 (1st Cir.1983). To state a claim under this standard, a defendant must allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not a knowing and intelligent act.

*McMann supra,* 397 U.S. at 774, 90 S.Ct. at 1450; *Tollett v. Henderson,* 411 U.S. 258, 266–267, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235 (1973). Under *McMann,* Acevedo is required to show both that counsel's representation fell below a standard of "reasonably competent assistance", *United States v. Bosch, supra,* 584 F.2d at 1121 and that counsel's incompetency rendered the defendant's decision to plead guilty an unknowing and unintelligent act. *Dufresne v. Morán,* 729 F.2d 18, 23 (1st Cir.1984).

The record in this case clearly reveals the decision to enter a guilty plea was voluntarily made and was not based upon inadequate representation by counsel. Quite to the contrary, Acevedo stated under oath that he had decided to enter a plea of guilty against the advice of his attorneys Gil de Lamadrid and Morales-Sánchez. *See* affidavit filed on June 17, 1985. The initial attempt to contact the United States Attorney's Office was made by Acevedo through his son and later, he expressly designated Morales-Sánchez and Gil de Lamadrid to negotiate an agreement with the government. It appears that after they were retained, Morales-Sánchez and Gil de Lamadrid consulted with the defendant on numerous occasions and for extended periods of time. The record nowhere indicates that counsel for defendant failed to confer adequately with Acevedo before a decision was made to enter a guilty plea or that counsel's preparation for the change of plea hearing was inadequate. Further, no extrinsic evidence has been proffered to buttress the allegations of ineffectuality or to counter the government's allegations of prejudice.

Clearly, counsel for defendant did not compel defendant to plead guilty. It is apparent from the circumstances that after consultation with his attorneys and with knowledge of the strong case against him and the other pending indictments, Acevedo made a voluntary and knowing decision to plead guilty. As in *Kobrosky,* Kunstler, Acevedo's new counsel, "apparently spurred by the belated dawning of an awareness of these shortcomings, has peppered his brief in this court with supposed facts and theories ... in a misguided effort to document" certain conclusory allegations of ineffective assistance of counsel. *Id.,* 711 F.2d at 457.

Since Acevedo fails to reasonably substantiate his ineffective assistance of counsel claim with any material issues of fact, he has failed to "overcome the presumption of regularity which the record ... imparts." *Walker v. Johnston,* 312 U.S. 275, 286, 61 S.Ct. 574, 579, 85 L.Ed. 830 (1941). We are satisfied that defendant's plea was voluntary and was not induced by any claimed ineffective assistance of counsel.

Acevedo also argues as grounds for withdrawal that new evidence had come to light which gave him new insight into his defense. However, no new evidence has been suggested nor has defense counsel adduced any reason for failing to put forward the evidence in question at an earlier time. At the change of plea hearing defendant was specifically asked if he had any evidence to rebut the evidence announced by the government and he answered in the negative. In fact, this appears to be the classic case of a defendant finding out what might happen to him based on the fate suffered by him at the sentencing hearing in the Taillex case, and then deciding to back out of his plea bargain and take his chances that the government will not be able to prove its case. *Cf. United States v. Bryant,* 640 F.2d 170, 173 (8th Cir.1981).

There is clear indication that Acevedo delayed his motion to withdraw until he had the opportunity "to test the weight of potential punishment", *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963), since his motion was not filed until after Judge Laffitte had sentenced him to a greater term than the one contemplated by the plea agreement and after attempts to renegotiate the plea agreement with the government had failed. *See Núñez-Cordero, supra,* 533 F.2d at 723. Given the sequence of events, we cannot escape the conclusion that Acevedo's sentence in the Taillex case is "at the root of all this." *Cf.*

*United States v. Morgan*, 567 F.2d 479, 500 (D.C.Cir.1977).

Additionally, Acevedo asserts that due to his emotional state of mind he was unable to comprehend the consequences of a guilty plea in this case and all future cases. However, we clearly recall Acevedo's demeanor during the change of plea hearing, where he appeared to be a well-oriented and intelligent individual. Acevedo's answers were rational and coherent during a long and extended hearing that lasted more than an hour. At no time was it suggested that defendant lacked the mental capacity to understand what was going on. The extensive colloquy between this court and defendant during the change of plea hearing shows that Acevedo understood fully the nature of the charges against him and the consequences of his plea. *Crosby, supra,* 714 F.2d at 192. Specifically, the court made a finding that the defendant was competent to plead at that time and the attorneys for all sides stated that they had no doubts whatsoever that defendant was competent. Therefore, we find this argument specious as well as untenable.

Finally, defendant argues that there was prosecutorial misconduct since the government entered into the plea agreement which affected defendant's right to appeal in the Taillex case without notifying Kunstler. This notwithstanding, it is adduced that defendant's attorneys, Morales-Sánchez and Gil de Lamadrid did not have any authority to engage in plea discussions relating to the disposition of the Taillex case.

Again, the record fails to buttress defendant's allegations. The uncontroverted facts indicate that Acevedo initially approached the government in an attempt to enter into an agreement, and upon the government's insistence that Acevedo conduct any negotiations through counsel, Acevedo retained attorneys Morales-Sánchez and Gil de Lamadrid and the government dealt with them at all times. Abreu-Elías, Acevedo's local attorney in the Taillex case, was aware of the ongoing negotiations, although he did not have knowledge of the details.

It also appears from a telegram sent by Kunstler to Judge Laffitte excusing himself from the sentencing hearing in the Taillex case, that Kunstler was aware that Acevedo had retained new counsel and was no longer relying on his legal advice. Furthermore, Acevedo instructed his wife to inform Kunstler and Kuby not to be present at the sentencing hearing. *See* Exhibit 8 at page 5 of government's motion, which is the transcript of the sentencing hearing in Taillex case. *Also see* sworn statement of Kunstler at page 3, filed on July 3, 1985.

We note that the affidavits filed in support of defendant's motion contain no allegation that the government unconstitutionally coerced or induced Acevedo's plea. *Cf. Alford, supra,* 400 U.S. at 31, 91 S.Ct. at 164; *McMann supra,* 397 U.S. at 767–69, 90 S.Ct. at 1446–48. Under the present circumstances, the allegations of prosecutorial misconduct are completely unfounded.

■ The standard for determining whether a hearing is required on a motion to withdraw a guilty plea made under Federal Rule Criminal Procedure 32(d) is the same as that for a motion to vacate a sentence under 28 U.S.C. § 2255. *United States v. Fournier,* 594 F.2d 276, 278 (1st Cir.1979). An evidentiary hearing is required when the records and files in the case, or an expanded record, cannot conclusively solve substantial issues of material fact, and when the allegations made, if true, would require relief. *United States v. Butt,* 731 F.2d 75, 77 (1st Cir.1984). If the claim is based upon facts which the trial court, through review of the record or observation at trial is familiar, then findings may be made without an additional hearing. *McCarthy v. United States,* 764 F.2d 28, 31–32 (1st Cir.1985).

■ In the present case, there is a complete transcript of the Rule 11 hearing plus an expanded record which includes affidavits, letters, the transcript of the sentencing hearing in the Taillex case and other documents, which make it appropriate for us to rely on the record in reaching the

above findings without resort to another hearing.

WHEREFORE, in view of the foregoing, defendant's motion to withdraw guilty plea is hereby DENIED. Imposition of sentence is hereby set for October 18, 1985 at 9:30 a.m.

SO ORDERED.