**UNITED STATES of America**

v.

**John VERDUCCI**

No. 92–CR–30009–MAP.

United States District Court, D. Massachusetts.

Aug. 25, 2005.

Richard G. Birchall, Richard G. Birchall, Suffield, CT, for John Verducci (1), Defendant.

Vincent A. Bongiorni, Springfield, MA, for John Verducci (1), Defendant.

Ariane D. Vuono, United States Attorney's Office, Springfield, MA, for USA, Plaintiff.

Andrew M Zaikis, Mass. Dept. of Revenue, Rulings & Regulations Bureau, Boston, MA, for Massachusetts Department of Revenue, Movant.

## MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA (Docket No. 52)

PONSOR, District Judge.

### I. INTRODUCTION

Defendant was charged with conspiracy to defraud the United States in violation of 18 U.S.C. § 371; on June 17, 1992 he appeared with counsel, waived his right to indictment and pled guilty before Sr. Judge Frank H. Freedman. On Sunday, October 25, 1992, the day before his scheduled sentencing, the defendant contacted his attorney and indicated that he did not intend to appear in court the following day. On May 11, 1993, defendant was indicted for failure to appear, in violation of 18 U.S.C. § 3146. He remained a fugitive until his arrest by U.S. Marshals on September 10, 2004, in Memphis, Tennessee.

Defendant has now moved to withdraw his guilty plea, based upon alleged violations of his Fifth, Sixth and Fourteenth Amendment rights, as well as a violation of Fed.R.Crim.P. 7(b). For the reasons set forth below, the court will deny this motion.

## II. FACTUAL BACKGROUND

During the late 1980's the defendant was the owner and operator of an adult entertainment bar in Springfield, Massachusetts, known as the Mardi Gras. In 1988 and 1989 the government began investigating the defendant for "skimming" money from the bar—that is, failing to report business proceeds as taxable. The government was also looking into the defendant's investment of the skimmed funds in annuities, rare coins and a condominium.

During this investigation, the defendant was represented by Attorney Richard Birchall, who also represented Maurice Kirby, defendant's accountant and criminal associate. As the investigation unfolded, both Kirby and the defendant met with the prosecutor at proffer sessions. Kirby was eventually charged in a separate proceeding, pled guilty on February 28, 1992 and was sentenced on April 24, 1992 to serve a fifteen-month term of imprisonment.

On December 13, 1991, the government conveyed to the defendant's counsel a plea agreement, which was signed by defendant on February 18, 1992. In it, the defendant agreed to waive indictment and plead guilty to a one-count information charging him with violating 18 U.S.C. § 371 by conspiring to evade taxes owed to the federal government. The plea agreement laid out the potential penalty faced by the defendant and noted that the U.S. Attorney would recommend a sentence within the Guideline range.

On June 17, 1992 the defendant appeared before Sr. Judge Frank H. Freedman to offer his plea. Judge Freedman confirmed that the defendant was aware that his attorney had been representing Kirby and that he was nevertheless willing to have Attorney Birchall continue to represent him.

It is significant that Kirby was not a co-defendant, but was charged separately with offenses arising out of the same facts.

Kirby had, as noted, already pled guilty and been sentenced by the time this defendant appeared to offer his plea. Defendant's counsel confirmed that he had been representing both Kirby and the defendant "for about two years" and "we have all been familiar with it." Docket No. 6, Transcript at 3. In addition, the Assistant U.S. Attorney prosecuting the case confirmed that, if the government had taken the case against this defendant to trial, Kirby would *not* have been called by the government as a witness.

The court then confirmed on the record that the defendant intended to waive prosecution by indictment and proceed by information. The waiver was confirmed by a written document that the defendant signed. Although Judge Freedman generally described the defendant's rights to him, and the defendant was aware of the nature of the charge against him, the judge did not specifically advise the defendant of his right to indictment and the particular rights he would be giving up by agreeing to prosecution by information. In addition, in discussing Attorney Birchall's joint representation of Kirby, Judge Freedman did not enter into the detailed colloquy contemplated by *United States v. Foster*, 469 F.2d 1 (1st Cir.1972), and its progeny. *See* Fed.R.Crim.P. 44(c)(2), and the commentary on the 1979 Amendment to the Rule.

The court did, however, go through a detailed colloquy in determining that the defendant was offering his plea of guilty knowingly and voluntarily. The Assistant U.S. Attorney summarized the evidence that the government would have offered, primarily through the defendant's co-defendant, George David, who was cooperating. The charge encompassed not only the skimming of funds and their investment in annuities, rare coins and the condominium, but also perjury given by the defendant

during the grand jury proceeding. No objection was offered by the defendant or his counsel to the substance of the criminal activity summarized by the prosecutor, although there was some discussion about the impact of the plea upon any civil proceedings contemplated by the defendant against the co-defendant David or by the Internal Revenue Service against the defendant "for income tax that they feel is due and owing." Docket No. 6, Transcript at 19.

As noted, defendant failed to appear for his sentencing and remained at large for nearly thirteen years. At the time he was arrested, the defendant was found in possession of over $700,000 in cash, either on his person or in a storage box maintained outside his residence.

## III. DISCUSSION

■ Fed.R.Crim.P. 11(d) permits a defendant to withdraw his plea of guilty where the defendant can show a fair and just reason for requesting the withdrawal. The First Circuit has noted a number of factors to be considered by the court in determining whether withdrawal is appropriate. These include whether the defendant's guilty plea was knowing, voluntary and intelligent; "the force and plausibility of the proffered reason;" whether the defendant is asserting legal innocence; the existence of a plea agreement, and the timing of the request. *U.S. v. Isom*, 85 F.3d 831, 834 (1st Cir.1996); *U.S. v. Kobrosky*, 711 F.2d 449, 455 (1st Cir.1983).

■ Even if the defendant successfully brings forward a fair and just reason for withdrawing his guilty plea, the court's analysis does not end there. The court must next consider "undue prejudice" that might be suffered by the government as a result of withdrawal of the plea. *Kobrosky*, 711 F.2d at 455; *see also Isom*, 85 F.3d at 835; *U.S. v. Ramos*, 810 F.2d 308, 313 (1st Cir.1987) (stating that an analysis

of prejudice is not necessary unless the defendant makes a requisite showing of a fair and just reason for withdrawing the plea). Additionally, the court may consider any "substantial inconvenience it would suffer were the plea to be withdrawn." *Kobrosky*, 711 F.2d at 455.

■ The court notes from the outset that the defendant waited over thirteen years after he entered his plea before filing a motion to withdraw his guilty plea. This substantial delay has relevance both to the timing of the defendant's motion, as well as the plausibility of his proffered reason for withdrawing his plea.

■ The First Circuit has upheld findings of unreasonable delay in cases involving one-tenth the amount of time in this case. *U.S. v. Pagan–Ortega*, 372 F.3d 22, 31 (1st Cir.2004) (involving a two-month delay); *U.S. v. Solano–Moreta*, No. 98–1091, 1998 WL 1085815, at *2 (1st Cir. Dec.1, 1998) (involving an "unreasonable" delay of six months); *U.S. v. Marrero Rivera*, 124 F.3d 342, 353 (1st Cir.1997) (involving an "extended" delay of fourteen weeks). Furthermore, the longer a defendant waits to withdraw his plea, the "more forceful his reasons in support of withdrawal must be." *U.S. v. Laliberte*, 25 F.3d 10, 15 (1st Cir.1994); *U.S. v. Parrilla–Tirado*, 22 F.3d 368, 373 (1st Cir.1994) (stating that a delay of six months between the plea and defendant's motion to withdraw his plea "cast[s] a long shadow over the legitimacy of his proffered reasons for seeking to change course"). The defendant's "extended delay in seeking to vacate the guilty plea likewise diminishes [the] plausibility" of the principal grounds on which his motion is based. *Marrero Rivera*, 124 F.3d at 353.

Thus, defendant's motion to withdraw his plea fares poorly with respect to the factors of plausibility and timing. Additionally, the government and the defendant did reach a plea agreement here, which

also cuts against the defendant. The court will now consider the defendant's three principal arguments in support of his effort to withdraw his plea.

First, the defendant points to the alleged failure of the court to advise the defendant as to his rights in connection with the waiver of indictment and agreement to proceed by information, as set forth in Fed.R.Crim.P. 7(b). Courts have frequently found, however, that, where the defendant's essential rights were adequately protected, a technical violation of Rule 7 will not entitle the defendant to substantive relief. *See U.S. v. Moore*, 37 F.3d 169, 173 (5th Cir.1994) ("Rule 7(b) requires that the defendants be informed of the nature of the charge and their rights, but does not impose on the *court* an obligation to do anything."); *Ornelas v. U.S.*, 840 F.2d 890, 892 (11th Cir.1988) ("A technical violation of Rule 7(b) is not an error that warrants relief pursuant to 28 U.S.C. § 2255."); *U.S. v. Ferguson*, 758 F.2d 843, 852 (2nd Cir.1985); *U.S. v. Montgomery*, 628 F.2d 414, 416 (5th Cir. 1980); *U.S. v. Travis*, 735 F.2d 1129, 1131 (9th Cir.1984), and *U.S. v. Hammerman*, 528 F.2d 326, 332 (4th Cir.1975).

Several factors support the government's position that the waiver of indictment was valid here. First, the fact that defendant would be waiving indictment and proceeding by information appeared in the plea agreement, signed four months prior to the plea proceeding. Clearly, the defendant had ample time to discuss this issue before pleading. Second, the court orally confirmed to the defendant that he was agreeing to waive indictment and proceed by information. Third, this waiver

was further confirmed in writing, at a time when the defendant was fully aware of the charges against him.[1] Under these circumstances, even assuming a technical violation of Rule 7(b), the defendant has not shown that he suffered any sufficiently substantive prejudice to justify withdrawal of his guilty plea, especially after such a long period of time.

Defendant's second argument is that the conflict created by his attorney's representation simultaneously of himself and of Kirby was so gross as to create a conclusive presumption of prejudice. In support of this argument, the defendant cites *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). *Wheat* involved a situation where the Supreme Court affirmed a trial judge's denial of a defendant's request to be represented by an attorney representing a co-defendant as a proper exercise of the court's discretion. Nothing in the decision suggests that, where a conflict exists, substantive prejudice must be presumed.

Here, it is unclear whether any inquiry pursuant to Fed.R.Crim.P. 44(c)(2) was required. Kirby was not a co-defendant. He was not slated to be a witness in the government's case. He had already pled guilty and been sentenced. Moreover, Judge Freedman did specifically inquire about the existence of the conflict and obtained the defendant's consent to proceed. Again, in the context of a thirteen-year delay, the substantive prejudice, if any, to the defendant in these circumstances is simply insufficient to justify withdrawal of the guilty plea.

If, as the defendant now alleges, he was unaware of the extent of Kirby's coopera-

1. Defendant's argument that the information modified the charge against him prejudicially is not persuasive. It is true that the plea agreement indicates that the defendant would plead guilty to conspiring to evade taxes and the information uses the phrase "conspiring to defraud the United States." Both documents, however, cite 18 U.S.C. § 371, and the substance of the charge, including the statutory maximums, the amount of loss, and the Sentencing Guideline range remained the same.

tion against him, and unaware of his attorney's purported orchestration of cooperation by one client against another, then defendant's unhappiness with the professional and ethical behavior of his attorney is certainly understandable. At the same time, the record does not present evidence of any *substantive* prejudice to the defendant. *See Brien v. U.S.*, 695 F.2d 10, 15 (1st Cir.1982) (stating that the conflict "must be real, not some attenuated hypothesis having little consequence to the adequacy of representation"). In other words, the defendant has not pointed to anything that his attorney did, or failed to do, as a result of his representation of Kirby that placed the defendant in a more disadvantageous position than he would have occupied had his attorney not represented Kirby at all. The fact of the matter was, as the Assistant U.S. Attorney pointed out, the government did not need Kirby's testimony at trial, because it had the defendant's co-defendant, David, actively cooperating and prepared to testify against the defendant. While Attorney Birchall's conduct may have been reprehensible, if defendant's allegations are believed, this is simply a case of no harm, no foul. Neither *Wheat* nor any other case suggests that prejudice must be presumed.[2]

The defendant's last argument is that he was simply not aware of the full nature of the charges against him and the potential consequences of his plea, and therefore failed to offer his plea of guilty knowingly and intelligently. The transcript of the plea proceeding belies this broad argument.

Finally, even if the court were to find that the defendant's arguments establish a fair and just reason, the more than thirteen-year delay between the defendant's initial plea and his motion to withdraw the plea presents a significant risk of unfair prejudice to the government. It is true, as defense counsel has pointed out, that the defendant's cooperating co-defendant, David, is apparently still alive and available. Also, almost all the documents associated with the case have been located. These factors, however, cannot offset the obvious difficulties that arise following such a lengthy delay. Far shorter delays have been found to constitute unfair prejudice. *See i.e., U.S. v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir.1989) (eight-week delay prejudicial); *Kobrosky*, 711 F.2d at 455 ("[T]he longer the delay in moving for a plea withdrawal, the greater this prejudice [to the government] is likely to be.").

In sum, in "calibrating the scales," all the factors the court must consider to decide defendant's motion to withdraw his plea weigh against allowing his motion. *Pellerito*, 878 F.2d at 1541.

## IV. CONCLUSION

For the foregoing reasons, the defendant's Motion to Withdraw his Guilty Plea is hereby DENIED. The clerk will set this matter down for a prompt status conference to establish a date for sentencing.[3]

It is So Ordered.

---

**2.** In fact, the Supreme Court's decision in *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), contradicts defendant's argument. In *Mickens*, the Court held that prejudice is only presumed in circumstances of certain "magnitude," such as when a judge does not inquire into a counsel's conflict of interest and the conflict "ad-

versely affected the counsel's performance." *Id.* at 171, 122 S.Ct. 1237. Thus, before this court can presume prejudice to the defendant, he must first demonstrate that "the conflict of interest *actually affected the adequacy of his representation.*" *Id.* (emphasis in original).

**3.** Obviously, given the court's findings with regard to the weakness of the defendant's

arguments, no necessity exists to pursue these claims through an evidentiary hearing.