UNITED STATES of America, Appellee,

v.

Peter F. CROSBY, Defendant, Appellant.

No. 83–1040.

United States Court of Appeals,
First Circuit.

Argued June 6, 1983.

Decided Aug. 2, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 9, 1983.

Certiorari Denied Jan. 9, 1984.
See 104 S.Ct. 716.

Robert Sheketoff, Boston, Mass., with whom Zalkind & Sheketoff, Boston, Mass., was on brief, for defendant, appellant.

Richard G. Stearns, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before McGOWAN,* Senior Circuit Judge, BOWNES, Circuit Judge, and SKINNER,** District Judge.

BOWNES, Circuit Judge.

This is an appeal from the denial of defendant-appellant's motion to withdraw his guilty plea. There are two issues:

1. whether, under the circumstances, the district court conducted a sufficient inquiry to determine that the plea was voluntary; and

2. whether the district court adequately informed defendant of the nature of the charge against him and correctly determined that he understood it.

*The Pretrial Facts*

The guilty plea issues must be viewed against the background of the district court's pretrial attempts to ensure that defendant was represented by counsel at the trial. A twenty-five count secret indictment was returned against defendant, Peter Crosby, and three codefendants on April 28, 1982. Defendant was charged in sixteen of the counts with conspiracy, interstate transportation of stolen property, wire fraud, mail fraud, obstruction of justice and perjury.

After being arraigned, defendant was released on bail subject to certain travel restrictions. In July the case was given a trial date of September 20, 1982. On August 3, 1982, defendant's counsel, Ivan Fisher, moved to withdraw stating, "I have experienced a persistent and irremedial failure in communication between my client and me which has rendered it impossible for me to represent Mr. Crosby effectively." The motion also stated that Fisher and defendant had failed to agree on attorney fees. At the hearing on the motion on August 10 defendant told the court that he was retaining the Boston firm of Warner and Stackpole, that "the attorney who has consented to handle my case will return to the City on Monday," and that he had a group of three attorneys there which could give him adequate representation. The court granted the withdrawal motion and warned defendant that trial was set for September and "you should advise your new attorneys they had better get ready immediately" because no continuance would be granted. At no time did defendant advise the court that Warner and Stackpole were being retained solely to represent him relative to his bail conditions.

After the court learned that Warner and Stackpole had filed only a special appearance, a hearing was held on September 14 on the question of defendant's trial representation. The court informed defendant that the case would commence within a month after September 20 and defendant "must have counsel no later than the end of this week, ... because I will not grant a further continuance for counsel to get ready if you don't have counsel by the end of this week." Upon inquiry, the defendant stated that he understood what the court had said. On September 15 the case was noticed for trial on October 12.

A further hearing was held on September 28. At that hearing Attorney Stephen Gor-

---

* Of the District of Columbia Circuit, sitting by designation.

** Of the District of Massachusetts, sitting by designation.

don of Worcester appeared, but the defendant informed the court that he was appearing pro se and that Gordon was present "as a consultant only." The court rehearsed what had already taken place relative to defendant's representation and ended by stating, "I urge you once again to engage counsel forthwith because whether or not you have a lawyer this trial will start on October 12th at 9 a.m. as scheduled." Defendant filed a motion for a change in his bail travel conditions; the court said that he could file the motion but that it would not consider it until defendant had retained counsel.

On October 12, the day of the trial, Norman Buntaine appeared as trial counsel for defendant. He informed the court that "I am not prepared to file my notice of appearance if, in fact, the jury selection begins on this date and trial would begin on this date." He then stated, "I came here expecting to ask for a six-week adjournment." The court indicated that it would grant a continuance,[1] but would not discuss its length until after Buntaine filed a written appearance for defendant. Buntaine filed his appearance; an eight-day delay in the start of the trial was granted.

We fully agree with the district court's finding that defendant's representation of due diligence in trying to obtain counsel was not believable. Indeed, the facts strongly suggest that defendant deliberately procrastinated in obtaining counsel so as to force a delay in the start of the trial.

*The Guilty Plea*

Defendant's background and experience is pertinent. At the time of the trial he was in his early sixties. He had a college education and served under General Patton in World War II. Most significantly he had, by his own admission, been in federal court over seventy times. His prior record showed two prior convictions of conspiracy and fraud which involved the looting of one corporation and the aborted looting of another, one conviction of conspiracy and embezzlement, which was perpetrated while defendant was on parole, and an attempted

forgery with an eighty-year old woman as the intended victim. The convictions were the result of guilty pleas.

Defendant and two codefendants were tried together. After eleven days of trial the court was notified that defendant wished to enter a guilty plea. By this time the government had presented the main part of its case against defendant. At least a dozen witnesses had testified and more than eighty exhibits had been marked in evidence. The chief government witness had been on the stand for six days of direct and cross-examination.

The hearing on the acceptance of the guilty plea covers forty-nine pages in the record. The plea bargain was discussed and explained at length (11 pages of transcript); the defendant, his counsel, the prosecutor, and the court all took part in the discussion. During the colloquy on the terms of the plea bargain, the court twice told the defendant and his counsel that if defendant was unwilling to go along with the proposed plea bargain the trial would proceed. At no time did defendant or his counsel indicate that they wanted the trial to resume. As a result of the extended discussion the prosecutor modified the plea bargain to meet certain objections of the defendant. Finally, the court said, "Mr. Crosby, I understand that you, are now offering to plead guilty to one count, only, of this multicount indictment, namely, Count One, which charges conspiracy, is that correct?" The defendant replied, "Yes, your Honor." The court then stated:

> Before I can accept the plea, I must ask you a series of questions and explain certain things to you to make sure that you understand the nature of the charge to which you are pleading, the maximum penalty that the Statute provides, to make sure that you're pleading voluntarily and to make sure that you understand what rights you are waiving by pleading guilty and, also, that you, in fact, are guilty.

---

1. Counsel for one of the other defendants had also requested a continuance.

In response to the court's inquiry the defendant said, "I understand what you just said, yes, your Honor." Defense counsel then interrupted the questioning to request that defendant be given a six months delay between the acceptance of the plea and sentencing. The court pointed out that there would be a delay for preparation of the presentence report, but stated emphatically that it would not agree to a six months delay. Defendant insisted on making the following statement. "I performed a very dangerous, expensive service for this country. And I think if you knew the facts, I would be allowed to discuss this on the record in chambers. And I have a letter to verify this." The letter was submitted to the court and is part of the record.

The court refused to conduct any of the proceedings in chambers. Defendant stated that in order to effectuate "this service" he needed to travel and then presumably referring to his bail travel restrictions, said that if he was going to be "imprisoned on the Island of Manhattan, where I can't perform, I'm withdrawing, and I will not plead and I will go to the end and I'll fight ten trials." Defense counsel interjected that he had discussed this with the prosecutor who had said that he would not oppose a reasonable request for adjournment and might well request it. The court stated that it had no problem with that and started to explain that defendant would have "a reasonable time between the—" when it was interrupted by defendant who asked "what's wrong with six months." After another interjection by defendant, "I'll last six more months. You'll be able to sentence me," the following exchange took place.

THE COURT: We will either proceed to the plea right now, in accordance with the normal manner of taking a plea, or we will proceed with the trial.

Are you ready to proceed with the taking of a plea, Mr. Crosby?

MR. CROSBY: Yes, I am, your Honor.

The court then proceeded to question the defendant. In response to an inquiry as to whether he had read and understood the indictment, the defendant said he had read it, but did not understand it. This was followed by a statement that he could read, write, and understand the English language and that he understood the court. The court then went on to carefully explain the constitutional rights defendant was waiving by pleading guilty. Defendant stated clearly in response to specific questions that he understood fully the consequences of a guilty plea. The substance of Count One of the indictment, to which the defendant was pleading, was explained and the maximum penalty it carried was stated.

When the defendant was asked if anyone threatened or coerced him to enter the plea, he said the FBI had coerced him. The court then asked, "In what way?" The defendant replied as follows:

By tapping my telephones in New York City; by absconding with my address book and making hundreds of copies and sending it all over the world, to every FBI jurisdiction in the United States; calling everybody in the address book, 400 people approximately, and intimidating and denigrating me, and threatening people that they're going to be in serious trouble if they have any further dealings with me, I would say is tremendous coercion, unbelievable coercion.

The court then asked defendant if he understood that it could not accept a coerced plea. Defense counsel suggested that the court advise defendant that it was inquiring "as to whether this Court or any of its personnel . . . has coerced Mr. Crosby." After defendant stated that FBI agents had threatened him with a half dozen more indictments, the court asked defendant by separate questions if it, or either of the attorneys, had coerced him to enter a plea. The answer was negative in each instance.

The terms of the plea bargain were outlined and explained again. Defendant stated that the government had made other promises. The court asked him to state them. He said one was "that I could be sentenced under Rule 20. And if they intend to break up this bank problem in other

regions of the United States, that that [sic] would be covered by a Rule 20 plea." The prosecutor then stated that defendant would be permitted to plead under Rule 20 to any charges related to anything mentioned in the conspiracy count, if an indictment were brought. The next promise alleged by defendant was "that there would be no amount of loss specified to the Probation Department."[2] The following colloquy then ensued.

The other point is that in order to implement the thought encompassed in a two-page letter, which I would like to present to the Court, my travel rights would be restored and the bail would remain the same and I would have my passport in order to go to Guatemala to implement what your Honor would see in this two-page letter, the problem that exists in this letter.

And I think that's the total.

THE COURT: Well, as to the last, the Government can only make recommendations and the ultimate decision is mine. Correct?

MR. STEARNS: That's—I explained that to Mr. Crosby, that this would be between him and the Court. I have said that the Government will not ask for any increase or revocation of bail.

THE COURT: All right.

MR. BUNTAINE: And today I intend to ask the Court to amend those provisions.

THE COURT: Well, we'll come to that.

MR. BUNTAINE: Thank you.

THE COURT: We're not there yet.

MR. BUNTAINE: Thank you.

After restating the plea bargain as finally agreed to by defendant, the court had the prosecutor summarize the evidence on Count One, most of which had already been presented at trial.

Defendant then made a lengthy ambiguous statement about his role in the conspiracy. After a series of specific questions by the court as to what defendant had done and to which defendant gave evasive or noncommittal answers, defendant admitted that he knew there were no funds to cover a check in the amount of $8,000 issued to Simmons College. The court then stated that defendant's guilty plea would be accepted. Defendant was asked if he wished to change his plea to Count One. He stated that he did. When asked how he pleaded to Count One, and being assured that it was the conspiracy count, defendant stated, "I plead guilty to that count."[3] Bail conditions were discussed; the court then set different and more liberal travel restrictions than had been in effect. Disposition was set for January 4, 1983, two months hence.

On January 4, 1983, Attorney Buntaine moved to withdraw the guilty plea, which was denied. Defendant and his attorney were given an opportunity to read the presentence report and comment on it. Attorney Buntaine's plea for leniency was as cogent as could be in light of the facts. In his presentence statement, defendant alleged that he had been prevented from performing the service for the government, that this was a contravention of the inducement that caused him to plead in the first place and that was why he was asking to withdraw his plea. The court sentenced the defendant to four years imprisonment, which was the term recommended by the government and specifically referred to in the plea bargain.

Attorney Buntaine withdrew as defendant's counsel. He subsequently filed an affidavit stating, *inter alia,* that he was unable to render fully effective assistance as counsel because of inadequate time to prepare.

*The Law*

■ The first and basic legal principle is that "[a] defendant possesses no absolute

---

**2.** It is uncontroverted that no one had suffered any financial loss as a result of the conspiracy. As the district court pointed out at the sentencing hearing, however, this was because the scheme failed, not because of any course of conduct by defendant.

**3.** The two codefendants pleaded guilty three days later.

right to withdraw a guilty plea even prior to the imposition of sentence." *United States v. Kobrosky,* 711 F.2d 449 at 454 (1st Cir.1983); *Nunez Cordero v. United States,* 533 F.2d 723, 726–27 (1st Cir.1976). This, however, is tempered by the rule that before a district court can deny a motion to withdraw a guilty plea it must decide whether it would be "fair and just" to do so under the circumstances of the case before it. *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). Our standard of review has been well stated as follows:

> The standard guiding the trial court in deciding a motion to withdraw a plea of guilty before sentence is simply whether or not "fair and just" reason has been advanced, *see Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927). It should be liberally allowed. The standard guiding the reviewing court is whether the district court has abused its discretion, *see* e.g., *United States v. Barker,* 514 F.2d 208, 220 (D.C.Cir.1975), as to which an appellant carries the burden. *United States v. Webster,* 468 F.2d 769 (9th Cir. 1972); *United States v. Lombardozzi,* 436 F.2d 878 (2d Cir.1971).

*Nunez Cordero v. United States,* 533 F.2d at 725.

A crucial consideration in most guilty plea revocation cases is whether the plea was made voluntarily with full understanding of the charges. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). "At the core of Fed.R.Crim.P. 11 is the policy that a court should not accept a guilty plea unless it determines that the plea is voluntary and the defendant understands the nature of the charges." *Mack v. United States,* 635 F.2d 20, 23 (1st Cir.1980).

■ Defendant argues that his guilty plea was not voluntary for three reasons, which we discuss seriatim. He first asserts that the court failed to conduct a sufficient inquiry into his claim of coercion. Defend-ant's claim of coercion by the FBI made no sense and we find no merit in this argument. It was obvious that the FBI had nothing to do with defendant's decision to plead guilty. Defendant's attorney realized this because immediately after defendant's statement about the FBI, Attorney Buntaine suggested that the court inquire whether the court or any of its personnel had coerced the defendant. Moreover, the record shows that it was defendant who made the initial decision to plead guilty.

*[Lobby Conference]*

THE COURT: What is the story?

I received a cryptic message.

MR. BUNTAINE: Judge, my client, Mr. Crosby, has indicated to me that he would like to enter a plea to this Court of guilty to one of the charges on the indictment.

He actually has a letter that he's addressed and would like to have the Court take. I don't know of the appropriateness of the letter, but I can certainly speak for the record as to any questions your Honor might have. I've just had preliminary discussion with Mr. Stearns this morning about this. He and I still haven't ironed out all the details.

The letter referred to concerned defendant's self-styled service for the government and will be discussed later. It had nothing to do with FBI coercion. We think that under the circumstances the court's coercion inquiry was adequate. This is a far cry from *Mack v. United States,* 635 F.2d 20, on which defendant relies. In *Mack* the defendant told the court that he had been harassed beaten and drugged by the staff at the Medical Center for Federal Prisoners in Springfield, Missouri. He then stated, "I am being pressured into making this plea. I am not doing it of my own free will." *Id.* at 23. Here, the defendant informed his lawyer that he wanted to plead guilty and there was never any suggestion that his decision was the result of coercion in the accepted sense of the word.

Defendant's second attack on the voluntariness of his plea is based on the court's failure to inquire into the existence of some promise other than the disclosed plea bargain that might have prompted the guilty plea. The only record evidence as to what prompted the guilty plea came from defendant himself. He stated during the plea hearing that he was in the process of performing a dangerous service for the United States and that if he was not given the time to complete it between the acceptance of his plea and sentencing, he would not plead guilty. Defense counsel told the court that the prosecutor would not oppose a reasonable continuance of sentencing. The court set the sentencing date eight weeks later. The only objection to the sentencing date, January 4, 1983, was by defense counsel on the ground that it interfered with his Christmas holiday. No motion was filed by defendant between the plea hearing and the date set for sentencing for a continuance so that the alleged dangerous service could be completed.

The only thing clear about the letter which supposedly describes the dangerous service is that it is entirely self-serving. It was written by the defendant to James Crotty, Special Agent, United States Customs Department, Washington, D.C. It is titled, "Re: Unlicensed arms and ammunition to be delivered by airplane in the state of North Carolina, U.S.A." The letter in a rambling and disjointed manner suggests that in return "for financing the expenditures needed to result in the apprehension of these unlicensed criminal coconspirators" [those who were to deliver the arms and ammunition to North Carolina], I desire the following consideration concerning the matter for which I am presently on trial in the Federal Court, Boston, Massachusetts." The letter then goes on to state what defendant expected. The letter concludes, "I would appreciate an incisive, conclusive, appraisal, opinion and recommendation by November 5th." This was the date of the guilty plea.

We cannot fault the district court for not questioning defendant about a promise that had not been made. The question is wheth-

er it was reasonable, in an objective sense, for the defendant to believe that if he did certain things the government would make specific sentencing recommendations.

> If subjective impressions, however irrational and unfounded, were enough, any defendant could claim them and thus secure tactical advantages by pleading guilty and delaying his withdrawal motion to a point where retrial would be onerous or impossible for the Government. In our view, the proper question in this case is not whether appellants entertained the erroneous belief that silence was their duty, but whether this belief was, in an objective sense, reasonable in the circumstances.

*United States v. Barker,* 514 F.2d 208, 224 (D.C.Cir.1975) (citations omitted). We conclude that defendant's belief that the government would intervene in his behalf if he performed this self-described and self-imposed service was unreasonable and unfounded. Defendant and his counsel had eight weeks between the time of the plea hearing and the date of sentencing to contact Crotty and obtain an affidavit from him or to move that the court order Crotty to appear at the sentencing hearing. The failure to do anything but allege a bizarre undertaking speaks for itself.

The third attack on the voluntariness of the plea is at least easy to understand. Defendant argues that a guilty plea is not voluntary if it is entered because defense counsel is not prepared for trial and the district court failed to adequately inquire about this. The facts demolish this argument. There is not the slightest suggestion in the record that the guilty plea was in any way prompted by the state of the trial preparation of defendant's attorney. It is true that in his affidavit filed in February 1983, after his withdrawal from the case, Attorney Buntaine did state that he was unable to render fully effective assistance as counsel because of inadequate time to prepare. But it is only on appeal that it is suggested that the timing of the trial had a bearing on defendant's decision

to plead guilty. We find this argument specious as well as untenable.

We hold that the defendant's plea was completely voluntary.

 Defendant's final claim of error is that the district court failed to inform him of the charge and determine that he understood it. If the plea had been tendered prior to the start of the trial, this contention might have some merit. Here, however, defendant had been exposed to the opening statement of the prosecutor and eleven days of evidence presented by the Government. Although defendant stated at one point during the sentencing proceedings that he did not understand the indictment, it strains credulity for him to claim that he did not understand the nature of the charge to which he pled guilty. Defendant stresses that the court did not read the indictment to him. After eleven days of evidence, we hardly think this was necessary. At no time was it suggested that defendant lacked the mental capacity to understand what was going on. The extensive colloquy between the court and defendant during the sentencing hearing shows that he understood full well the nature of the charges against him, particularly the conspiracy count to which he pled guilty.

There are other factors which militate strongly against withdrawal of the plea. Defendant at no time asserted flatly that he was innocent; he emphasized that no one had been hurt financially by the scheme. Our review of the trial transcript confirms the district court's finding that the evidence showed that defendant "was at the helm of the venture" and that the reason that money was not lost was "because the scheme did not succeed."

The defendant was no stranger to the federal procedures for accepting a guilty plea and sentencing. His colloquy with the court about being sentenced under Rule 20 (Fed.R.Crim.P. 20) as well as his prior record is evidence of sophistication in these matters. In fact, the defendant's past experience with federal criminal procedure and the record in this case raise a strong inference that defendant first tried to delay the trial and then attempted to use the guilty plea process to avoid the finality of a guilty verdict and, at the same time, manufacture grounds for revoking the plea later.

It is significant that the motion to revoke the plea was not filed until the day of sentencing, eight weeks after the plea was accepted. This complies with the letter, but certainly not the spirit, of Federal Rule of Criminal Procedure 32(d).[4] As the District of Columbia Circuit has pointed out, a long delay between the plea and the motion to revoke belies a claim that the plea was entered in haste and confusion and requires compelling reasons to support it. *United States v. Barker,* 514 F.2d at 222. We find no compelling reasons here for granting the motion to withdraw the plea and hold that the district court did not abuse its discretion in denying it.

*Affirmed.*

---

4. Rule 32(d) provides: "A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."