**UNITED STATES of America, Plaintiff,**

v.

**Ricardo LOPEZ SANCHEZ, Defendant.**

**Cr. No. 87–251 (PG).**

United States District Court,
Puerto Rico.

March 16, 1989.

Guillermo Gil, Trial Atty., U.S. Dept. of Justice, Caparra Heights, P.R., for plaintiff.

Blas C. Herrero, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

On April 28, 1988, defendant, Ricardo López Sánchez, pled guilty to count eight [1] of the indictment, which charged him with possession with intent to distribute cocaine during 1985, in violation to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Ricardo López Sánchez was sentenced on July 8, 1988, to three years imprisonment and fined the sum of $5,000.00

One month after being sentenced López Sánchez filed a motion under Fed.R.Cr.P. 11, 32(d), to withdraw plea of guilty and to set aside judgment of conviction.

Fed.R.Cr.P. 32(d), as amended in 1983, no longer authorizes a motion to withdraw a plea if the motion is made after imposition of sentence. At that point a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

The rule as amended in 1983 reads as follows:

(d) Plea Withdrawal. If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence, the court may permit withdrawal of the plea upon showing by the defendant of any

---

1. Count eight was the only count in which López Sánchez was charged.

fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

On August 19, 1988, at the hearing on defendant's petition to withdraw his guilty plea, the Court sustained the government's objection to defendant's motion in view that it failed to comply with Fed.R.Cr.P. 32(d), *supra.* Defendant was then instructed to modify its motion in order to comply with 28 U.S.C. § 2255.[2] The hearing was continued for August 26, 1988, at 10:00 A.M.

On August 25, 1988, defendant filed his petition under 28 U.S.C. § 2255,[3] thus conforming his request to the rule. He basically adduces therein that the conviction obtained by a plea of guilty was unlawfully induced and not made voluntarily with the understanding of the nature and consequences of the plea. In essence, defendant's assertions boil down to the allegation that he is innocent of the charges.

The amendment clarifies the standard applicable to plea withdrawal. The rule codifies the principle that withdrawal of guilty plea filed before sentencing may be granted upon a showing of "fair and just reason". *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). However, since defendant Ricardo López Sánchez has moved to withdraw his plea *post sentence,* he has proceeded "too late to come under the more generous 'fair and just reason' standard." *See* 97 F.R.D. 309. In turn he must seek relief pursuant to 28 U.S.C. § 2255, *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), whose applicable standard requires "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Ibid.*

It is well established that permission to withdraw a guilty plea under Fed.R.Cr.P. 32(d) is within the discretion of the Court. There is no absolute right to withdraw a guilty plea. *United States v. Ramos,* 810 F.2d 308, 311 (1st Cir.1987). A defendant should be allowed to withdraw a guilty plea only in "extraordinary cases." *Doherty v. American Motors Corp.,* 728 F.2d 334, 338 (6th Cir.1984). The defendant who has pled guilty no longer enjoys a presumption of innocence. Furthermore, on a motion to withdraw his plea, he bears the burden of production and persuasion. To unsettle a valid guilty plea, the defendant must offer more than protestations of innocence that he is not guilty. *Government of Virgin Islands v. Berry,* 631 F.2d 214, 220 (3rd Cir.1980). Moreover, even credible assertions of innocence may not warrant withdrawal of a guilty plea. *United States v. Jerry,* 487 F.2d 600, 610–611 (3rd Cir.1973); *United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).

In support of his contention defendant alleges that the conviction by the jury of all co-defendants tried in the first trial[4] caused fear of the supposedly impending high sentence which was to be imposed by the Court. Defendant states that he was left totally unable to voluntarily enter a plea of guilty.

Defendant and his brother Wilfredo were indicted in this case. Both were represented by counsel Teodoro Méndez Lebrón. Defendant maintains that his brother misled their joint counsel in concealing his guilt, and that in the aftermath he was prejudiced. He states that if his brother's

---

**2.** Both 28 U.S.C. § 2255 and Fed.R.Cr.P. 32(d) are properly characterized as the two principal procedures for attack of a federal plea conviction.

**3.** Thru the motion to withdraw the guilty plea Ricardo López Sánchez had raised the same arguments: that the plea was not knowingly or intelligently made; that he entered the plea after stating his innocence; and that conviction of all parties in the first trial created confusion which rendered him totally unable to voluntarily enter a plea of guilty.

**4.** On March 29, 1988, the Court granted a petition for severance filed by the Government. Two trials were to be held and the 22 defendants were grouped based on an evaluation of the evidence and to avoid any spill over effects. The first trial commenced on April 4, 1988. On April 21, 1988, the jury on this first trial brought a verdict of guilty as to all counts as to the 12 defendants that were tried together.

guilt would have been disclosed, their joint counsel would have seen a conflict of interest and would have withdrawn the joint representation.[5]

In sum, defendant argues that he was left with no other choice but to plead guilty in spite of his innocence and notwithstanding the constant manifestations to his counsel, the pretrial services officer, and the probation officer that he was not guilty.[6]

Petitioner finally stated that if he plead not guilty, went to trial and was not believed he would face long years in jail, whereas if he plead guilty, the plea agreement would limit the jail time and he *would get probation* since he had no previous record. But if he told the version of innocence, the jury would not believe him as they did not in the first group of co-defendants that went to trial and all were convicted, some with slighter evidence than the government had against him.

After the request was filed conforming it formally to Fed.R.Cr.P. § 32(d), the hearing to withdraw the guilty plea was resumed on September 8, 1988. During said hearing several testimonies were secured.

### The Plea Withdrawal Hearing

Attorney Anibal Lugo was called to testify at the hearing. He stated that during a meeting on or about February 1988 with defendant's counsel he felt that defendant was well represented by counsel Teodoro Méndez Lebrón and that defendant had received a comprehensive explanation as to the alternatives in the case. He also stated that he felt that defendant was sure and straightforward in understanding the alternative. Mr. Lugo was not present every time defendant met with counsel Méndez Lebrón. He related that defendant alleged his innocence before and after the first trial and further expressed that this first

trial had a great impact on defendant, who is not familiar with the legal process.

Also during the hearing the testimony of defendant's brother, Wilfredo López Sánchez, was obtained. He declared he had alleged his innocence to counsel Méndez Lebrón but now admits responsibility to the facts charged.[7] He stated that his brother had nothing to do with the facts of this case. It is amazing to hear this witness state that he believed he was not prejudicing his brother's case by withholding facts to their joint attorney! However, during the cross-examination he admitted having seen Junior Sixto, one of the key characters in the venture, at his brother's business.

Defendant's mother, Ramonita Sánchez de López, was also called to testify. In her testimony she basically declared that Ricardo told her that he was innocent and that he had plead guilty upon the advice of his counsel, but that he did not want to plea guilty. She stated that her son Ricardo wrote down in his own handwriting two or three versions of the facts, and that among these, at counsel's request, made one admitting guilt. She admitted that everyone thought that her son was going to get probation. Defendant's mother stated that counsel explained to them the plea agreement with the government.

Juan A. Martinez was another witness called at the hearing. He stated that he had accompanied defendant to his former counsel's office "two or three" times. He entered the office once and heard defendant state he was innocent. At some other time he stayed outside but was told that defendant had asserted his innocence.

Mr. Teodoro Méndez Lebrón, who represented defendant and his brother, testified. He stated that the possible conflict of interest was addressed and discussed, but both

---

**5.** Defendant's argument is that he was thought guilty because his brother's allegations of innocence were false. However, he fails to address his innocence in light of the incriminating evidence against him supplied by the government.

**6.** Defendant states that when he said this to the probation officer two days before the entry of the plea of guilty they were surprised and re-

ferred him to his attorney, but he claims that this version was not acceptable to his counsel because it would not be accepted by the judge.

**7.** He told present counsel that his brother Ricardo had nothing to do with drugs, but he never told former counsel, Mr. Teodoro Méndez, that he was responsible for the cocaine.

clients alleged their innocence. Mr. Méndez Lebrón stated in open court that defendant said he had purchased five ounces of cocaine. He then told defendant of the offer of the government if he pled guilty, told him about the allocution during a Rule 11 (Fed.R.Cr.P.) hearing and the fact that the Court would ask him questions where he had to answer whether he was guilty of the charges or not.

The testimony of the attorney for the government, Mr. Guillermo Gil, also underscores the fact that defendant was expecting probation. Defendant directly expressed to him that he should have obtained probation. After he was sentenced, defendant became aggressive, alleged his innocence, and stated that he was going to prove it and change things around.

At this point it must be mentioned that disappointment is not sufficient basis for withdrawal of a guilty plea. It has been stated that if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment and withdraw the plea if the sentence was unexpectedly severe. *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963).

At the same time defendant's contentions seem to be contradicted by the record. In addition to evidence elicited during the hearing on the petition to withdraw the guilty plea, which lead to the conclusion that defendant entered the plea expecting probation, the terms of the plea agreement, the transcript of the change of plea, and the transcript of the sentencing proceedings fail to sustain defendant's allegations that the plea entered was involuntary or unduly coerced.

### The Plea Agreement

It appears from the terms of the plea agreement that the Government agreed to make a recommendation of four (4) years as the appropriate sentence to be imposed by the Court. It further appears from the terms of the agreement that the defendant understood that he was entering the plea agreement without compulsion, threats or promises from the U.S. Attorney or any other agents and that no other additional promises or conditions other those contained in the document were made.

### The Rule 11 Hearing

The dialogue which transpired between the Court and defendant during the hearing on the change of plea[8] on April 28, 1988, contradicts the version which defendant now sustains. The Court fully complied with Fed.R.Cr.P. 11(c). The Rule 11 colloquy was definitely meticulous. Our review of the transcript facilitates our conclusion concerning the voluntariness of the plea.

Defendant was first questioned concerning his understanding of the matter. He stated that he understood the charges and that he had enough time to consult with his lawyer. He stated for the record that he was satisfied with the services of his counsel (Tr. 4). The Court went on to explain defendant's right to trial by jury and also advised him of his right to be presumed innocent until proven guilty (Tr. 4). Defendant stated he understood everything.

Defendant was then sworn[9] and the Court duly inquired again about his rights:

BY THE COURT:

Q. Now, if I were to ask you again questions about trial by jury and to be presumed innocent, your answers would be the same?

A. Yes, Sir.

The Court went further:

Q. Another right you have is to come here to Court with your attorney, to see and hear the witnesses for the government testify against you, cross examine them through your attorney, object to evidence being presented, and to offer

---

**8.** The transcript of these proceedings was filed on August 24, 1988.

**9.** Before placing defendant under oath the Court advised defendant of his right to have any question repeated if not understood and further advised him that if his answers were not truthful he would be subjecting himself to charges of perjury.

evidence on your own behalf, you understand that?

A. Yes, Sir.

Q. Also, you would have the right at a trial, to testify if you chose to do so, or not to testify, and no inference or suggestion of guilt could be drawn from the fact that you did not testify, you understand that? (Tr. 5)

A. Yes, Sir.

Q. Now, by pleading guilty to count 8, you understand that you are waiving these rights, there will be no trial, and I will enter a judgment of guilty and sentence you after considering a pre-sentence report, you understand that?

A. Yes, Sir.

Q. Now, also by pleading guilty you understand that you would waive your right not to incriminate yourself, since I will be asking you some questions about what you did, in order to satisfy myself that you are guilty as charged, and you will have to acknowledge your guilt, you understand that?

A. Yes, Sir.

Q. Having discussed these rights that you have, and the fact that you are waiving them by pleading guilty, do you still wish to plea guilty to count 8?

A. Yes, Sir. (Tr. 5–6)

Afterwards, defendant flatly admitted that he entered the plea in the belief that he would be granted probation. At the Rule 11(c) hearing he admitted without hesitation that he was aware of the penalties contemplated by the statute.

Plea bargaining is an essential component of the administration of justice, *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *United States v. Papaleo*, 853 F.2d 16, 18 (1st Cir.1988), and here, through extensive questioning, the Court insured that the agreement was fair and enter into voluntarily.

Q. Do you know what the maximum possible penalty provided by statute is?

A. Yes, Sir.

Q. And what is your understanding of that?

A. Twenty years.

Q. And a fine of $250,000. or both, at the discretion of the Court?

A. Yes, Sir. (Tr. 6–7)

Defendant was also explicitly questioned concerning the voluntariness of his plea:

Q. Has anybody threaten (sic) you in any way to induce you to plea guilty?

A. No, Sir.

Q. Is anybody forcing you in any way to plea guilty?

A. No, Sir.

Q. Has anybody made any offers of rewards or other things of value to get you to plea guilty?

A. No, Sir.

Upon questioning defendant on the terms of the plea agreement defendant clearly stated he understood its terms. The dialogue reveals the following:

Q. Is there any agreement entered into between yourself, your attorney and the attorney for the government that you know of?

A. Yes.

Q. Counsel, you have the agreement?

MR. GIL: Yes, signed by all parties.

THE COURT: Let me summarize it for you, and you let me know if you understand this to be the agreement.

You will plea to count 8 of the indictment, the government is going to make a recommendation of four years as the appropriate sentence, you specifically understand that this plea agreement does not bind other federal districts, the federal civil or tax authorities, or the state or commonwealth authorities, civil or law enforcement authorities of the Commonwealth of Puerto Rico; that you are entering into this plea agreement without compulsion threats or promises from the United States Attorney, or any of its agents. And that is the extent of the agreement.

Q. Do you understand that to be the agreement?

A. Yes, Sir.

Q. All right. As I have stated to the other defendants who just pled guilty, at the time of sentence I intent to follow

the government's recommendation, but if I find that the sentence to be recommended is harsher than the one that I should impose, then I may impose a lesser sentence than the one to be recommended. You understand that?

A. Yes, Sir. (Tr. 7–8)

It appears that defendant pled guilty because he wished to take advantage of the government's plea offer. The Court proceeded to question defendant as to the facts of the case. The evidence in possession of the government against defendant was also summarized without the slightest objection from defendant's part.

Q. All right. Did you on or about the month of October or November, 1985, and aiding and abetting other numerous individuals, you did unlawfully, wilfully and knowingly posses (sic) with the intent to distribut (sic) an amount of cocaine?

A. Yes, Sir.

Q. Which is a Schedule II narcotic drug controlled substance. *Is that what you did?*

A. *Yes, Sir.*

Q. *And that is what you are pleading guilty to this morning?*

A. *Yes, Sir.*

Q. All right, Mr. Gil, give us a summary of the evidence pertaining to this defendant.

MR. GIL: Yes your Honor, if this case has to go to trial, the evidence will show that around October 1985 Mr. Luis Viera Lourido brought 96 kilograms of cocaine into Puerto Rico.

From that 96 kilograms Mr. Luis Viera Lourido and Sixto Rodriguez Martinez, another co-defendant in this case, they met with Mr. Ricardo López Sánchez and his brother of Uto Auto Center in Bayamón. (Tr. 8–9)

The dialogue was more specific:

THE COURT: And the testimony of agent Marte as to statements made by Mr. Pérez, concerning drug transactions, concerning this defendant.

MR. GIL: Right, yes, your Honor. The evidence will show Mr. Ricardo López Sánchez and his brother here, Wilfredo, purahcased (sic) 5 kilograms of cocaine from Mr. Luis Viera, and Mr. Sixto Rodriguez Martinez, and we will present that testimony through the testimony of Luis Viera. (Tr. 9)

In this case we have looked to defendant's admissions of guilt in open court to find the factual basis for the plea of guilty.

Contrary to what defendant now avers, at the time he made no exception to his involvement as presented through the summary of the evidence and wholly agreed with it.

BY THE COURT:

Q. Sir, do you agree with the summary of the evidence in the possession of the government?

A. Yes, Sir. (Tr. 9)

Here defendant has admitted guilt in open court to the offense to which he pled. Under such circumstances denial of withdrawal of guilty pleas have been sustained. *United States v. Saft,* 558 F.2d 1073 (2nd Cir.1977); *United States v. Bradin,* 535 F.2d 1039 (8th Cir.1976).

Evidently, the determination of voluntariness is at the core of Rule 11. *United States v. Daniels,* 821 F.2d 76, 80 (1st Cir.1987). In this case, compliance with Fed.R.Cr.P. 11 has been met. As evinced by the cited portions of the transcript of the Rule 11 hearing the plea agreement was made part of the record, a thorough inquiry as to the voluntariness of the plea was conducted, and defendant Ricardo López Sánchez was duly advised as to his rights and the consequences of the plea. *United States v. Ramos, supra.* The foregoing leads this Court to conclude that a factual basis existed for the plea and that defendant understood these matters. *United States v. Ramos, supra.*

Furthermore, underscoring the existence of a basis for the plea, defendant's counsel further stated for the record that full discovery had been received and that "we've been aware of the evidence against the

defendant since the very beginning of the proceedings in this case." (Tr. 10)

### Sentencing Proceedings

The sentencing proceedings [10] took place on July 8, 1988. At that time defendant was questioned by the Court if he had read the presentence report, he answered affirmatively (Tr. 3), and further stated that he had no comments on the same (Tr. 4).

The record discloses that counsel for defendant stated that the plea agreement called for a recommendation of four years as the appropriate sentence but prayed to the Court to consider granting probation including some type of community service.

It has been held that a plea agreement that requires the government to make a specific sentence recommendation is satisfied when the recommendation is made regardless of whether the Court accepts the recommendation. *United States v. Khoury*, 755 F.2d 1071, 1073 fn. 1 (1st Cir.1985). Both parts, the defendant and the prosecution, are to be held to their sides of the bargain. *Borden–Kircher v. Hayes*, 434 U.S. 357, 361–364, 98 S.Ct. 663, 666–669, 54 L.Ed.2d 604, *reh'g denied*, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978). The agreement here cannot be challenged on not compliance with the recommendation.

Relief is barred by cases from the First Circuit in actions which involve a judge's refusal to accept sentence recommendations as long as defendant has not been misled. *United States v. Valencia–Copete*, 792 F.2d 4, 7 (1st Cir.1986); *United States v. Khoury, supra*, at 1073 n. 1; *United States v. Keefe*, 621 F.2d 17, 19 n. 1 (1st Cir.1980); *United States v. Incrovato*, 611 F.2d 5, 6–7 (1st Cir.1979).

Furthermore, the transcript of the sentencing proceedings evince that this Court insured that the agreement was entered into by defendant voluntarily and knowingly in compliance with Fed.R.Cr.P. 11(e)(1). *Santobello v. New York, supra*.

10. The transcript of these proceedings was filed

### Conclusion

In this case defendant had the benefit of advice and extensive consultation before he pled guilty. Defendant further discussed the matter with his relatives. It has been held that even entreaties from loved ones do not constitute undue coercion to plead guilty. *Iaea v. Sunn*, 800 F.2d 861, 867 (9th Cir.1986). Such evidence may be good rather than undue coercion. *United States ex rel. Brown v. La Vallee*, 424 F.2d 457 (2nd Cir.1970), *cert. denied*, 401 U.S. 942, 91 S.Ct. 946, 28 L.Ed.2d 223 *reh'g. denied*, 402 U.S. 990, 91 S.Ct. 1675, 29 L.Ed.2d 156 (1971).

■ Defendant's plea was part of a plea bargain in which the government recommended a sentence substantially less than that which he could have received after a conviction at trial.

A summary of the government's case against him was offered during the Rule 11 hearing. At all times defendant appeared calm and controlled. He freely expressed his answers. This Court conducted a lengthy plea colloquy at which defendant was found to have understood charges against him and that he had pled intelligently and voluntarily.

In this case this Court's inquiries in the Rule 11 proceedings were complete and clear. These proceedings are crucial in determining whether the defendant's guilty plea was truly understanding and voluntary. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *Marquis v. United States*, 698 F.2d 13, 15–16 (1st Cir.1983). Here, defendant voluntarily and intelligently entered into a guilty plea within the meaning of Fed.R.Cr.P. 11. The transcripts of the proceeding so reveal. They are in direct contradiction to defendant's allegations of innocence before the Court.

Where the plea was properly entered under Fed.R.Cr.P. 11 the standard for judging the movant's reason for delay remains

on August 24, 1988.

low even where the motion is filed a day or so after the plea was entered. *United States v. Crosby*, 714 F.2d 185, 192 (1st Cir.1983), *cert. denied*, 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984); *United States v. Keefe, supra*, at 20; *Nuñez Cordero v. United States*, 533 F.2d 723, 725 (1st Cir.1976). It is evident that where a defendant is aware of the condition or reason for a plea withdrawal at the time the guilty plea is entered the case for withdrawal is weaker. *United States v. Usher*, 703 F.2d 956 (6th Cir.1983).[11]

This Court has serious doubts as to why the adduced grounds for withdrawal were not presented at an earlier point, *i.e.*, at the Rule 11 hearing or during the sentencing proceedings. Ricardo López Sánchez was sentenced on July 8, 1988, and approximately one month thereafter, on August 16, 1988, he requested withdrawal of the guilty plea he had entered on April 28, 1988. It is highly difficult for this Court to understand why the reasons raised in the withdrawal motion (the 2255 petition) were not brought during the hearing, *United States v. Kobrosky*, 711 F.2d 449, 455 (1st Cir.1983), when the defendant was questioned extensively as to the voluntariness of the plea and his understanding of the terms of the agreement. Withdrawals have been denied when filed eight weeks after entering the plea, *United States v. Crosby*, 714 F.2d 185, 192 (1st Cir.1983), *cert. denied*, 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984), twenty days after so doing, *United States v. Keefe, supra*, at 20, and even two weeks after pleading guilty, *Nuñez Cordero v. United States, supra*, at 725.

We reiterate that under the circumstances of this case defendant's claim cannot be convincing, especially where defendant at no time expressed to the Court that he was innocent. *United States v. Crosby, supra*.

■ Furthermore, it has been held that even one who makes a guilty plea without explicitly admitting guilt with the intention of receiving benefits of a plea agreement is not entitled to withdraw the plea. *United States v. Buckley*, 847 F.2d 991 (1st Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989). Our system of criminal justice even allows a defendant, who though believing in his innocence recognizes the likelihood that a jury will convict him, to plead guilty in order that he may lessen the sentence he is likely to receive. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *United States v. Allen*, 668 F.Supp. 969, 974 (W.D.Pa.1987).

In *Alford, supra*, the criminal defendant was charged with first-degree murder. In spite of his assertions of innocence the defendant elected to plead guilty to second degree murder because he wished to avoid the risk of a death penalty. A guilty plea under those circumstances was upheld by the Supreme Court for two basic reasons: first, because the defendant had intelligently concluded that his interests required the entry of a guilty plea, and second, because there was strong evidence in the record of defendant's actual guilt.

If the threat of a heavier sentence after conviction at trial influenced defendant's decision to plead guilty, the same does not justify withdrawal of his guilty plea. *Alford, supra; Bordenkircher v. Hayes, supra*, 434 U.S. at 363–364, 98 S.Ct. at 667–668; *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *United States v. Allen*, 668 F.Supp 969, 976 (W.D.Pa.1987), *aff'd.* 845 F.2d 1015 (3rd Cir.1988).

Under the circumstances of this case we cannot conclude that this plea was entered in "haste and confusion". *United States v. Barker, supra*, at 222.

The Court can give no weight to the testimony of his co-defendant brother, who at all times maintained his innocence before counsel. The course of conduct exhibited

---

**11.** Even in presentence withdrawals where the standard is liberal, *Nuñez Cordero v. United States, supra*, at 725, an assertion of legal innocence at that time is not in itself sufficient for withdrawal. *United States v. Ramos, supra*, at 312; *United States v. Barker, supra*, at 221.

by this co-defendant merits no credence to the Court.

The total set of circumstances of the case leads us to conclude that this tactical move by defendant eventually left him unsatisfied with the sentence received. *See United States v. Kobrosky, supra.*

Although defendant alleged to sources other than the Court that he was innocent, it has also been stated that "[t]here are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury would result in acquittal." *Nuñez Cordero v. United States, supra,* at 726. In this case the Court was presented and defendant confronted with evidence of his guilt. The facts relating to defendant's participation were recited. An additional fatal blow to defendant's assertions is his own written declaration concerning his participation in the venture. We thus conclude that this was at least in a sense a tactical guilty plea by defendant. *Allard v. Helgemoe,* 572 F.2d 1, 3 (1st Cir.), *cert. denied,* 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978).

In light of the transcript, the allegations that the guilty plea was entered as the result of duress from his counsel are found unconvincing. "All pleas of guilty are the result of some pressures or influences on the mind of the defendant." *Schnautz v. Beto,* 416 F.2d 214, 215 (5th Cir.1969).

■ A counsel's mere prediction of the likely though ultimately unfulfilled consequences of a guilty plea will not taint an otherwise valid sentence. *Knight v. United States,* 611 F.2d 918, 922 (1st Cir.1979).

It has been said that whether a defendant has pled intelligently and voluntarily depends upon the competence of counsel's advice. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Nevertheless, in order to present an attack on the voluntariness of a plea by reason of ineffective assistance of counsel, appellant must demonstrate that "counsel's representation falls below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.

2d 674, *reh'g. denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), and that he has been prejudiced, but for counsel's mistakes, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart, supra.*

In this case defendant's counsel employed the best professional judgment in recommending him to plead guilty. *Anderson v. Henderson,* 439 F.2d 711, 712 (5th Cir.1971); *United States v. Jones,* 392 F.2d 567, 569 (4th Cir.), *cert. denied,* 393 U.S. 882, 89 S.Ct. 186, 21 L.Ed.2d 156 (1968). There was evidence against defendant which was summarized and accepted during the hearing. In this case defendant has admitted factual guilt under oath. *United States v. Rogers,* 848 F.2d 166 (11th Cir.1988). Defendant is not found entitled to withdraw his plea. *Government of Virgin Islands v. Berry, supra,* at 220; *United States v. Barker, supra,* at 220–222.

Although the government is not required to establish prejudice that would result from a plea withdrawal, the district court may consider potential prejudice in exercising its discretion in considering the motion.

In this case, we also note that such a request will also cause undue prejudice to the government. Defendant's reasons after a careful scrutiny in light of the record have not acquired persuasive force to grant the withdrawal.

WHEREFORE, defendant's request to withdraw his guilty plea is hereby DENIED.

IT IS SO ORDERED.